[No. 67692-5. En Banc.]
Argued June 17, 1999.    Decided August 26, 1999.

THE STATE OF WASHINGTON, *on the relation of Michael J. Heavey, Petitioner,* v. MICHAEL J. MURPHY, *as Treasurer, Respondent.*

*Michael J. Heavey*, pro se.

*Christine O. Gregoire, Attorney General*, and *Narda Pierce, Solicitor General*, for respondent.

*Foster Pepper & Shefelman* by *Michael K. Vaska* and *David Utevsky*; *Swanson, Parr, Cordes, Younglove & Peeples* by *Edward E. Younglove* and *Anita L. Hunter*; and *Jerry L. Painter*, amicus curiae.

ALEXANDER, J. — Michael J. Heavey seeks a writ of mandamus prohibiting state Treasurer Michael J. Murphy from complying with RCW 82.44.110, as last amended by Referendum 49 (LAWS OF 1998, ch. 321, § 5). He argues that the statute violates CONST. art. II, § 40 (amend. 18) in that it requires the treasurer to deposit motor vehicle excise tax (MVET) revenues into the state's motor vehicle fund. Heavey initially requested that the attorney general initi-

ate this action. The attorney general declined his invitation, choosing instead to defend Referendum 49's constitutionality. Heavey thereafter commenced this action against the treasurer in this court. In light of the stipulation to facts, and the significance of the issue involved, we agreed to exercise our original jurisdiction and determine if a writ of mandamus should issue against a state officer, the Washington state treasurer.

## FACTS

The facts recited hereafter are based upon the stipulation to facts between the parties. CONST. art. II, § 40 (amend. 18) was submitted to the voters by the Legislature as House Joint Resolution 4. It was adopted during the 1944 general election as the eighteenth amendment to the state constitution. Referendum 49 was submitted to the voters by the Legislature and adopted in the November 1998 general election. Fifty-seven percent of the persons voting on the referendum voted in favor of it.

In December 1998, Heavey, a Washington resident and taxpayer, wrote a letter to Attorney General Christine Gregoire requesting that she initiate legal action to invalidate a section of Referendum 49, now embodied in RCW 82.44.110, on the basis that it violated CONST. art. II, § 40 (amend. 18). Heavey contended that a provision of CONST. art. II, § 40 (amend. 18) prohibited an act required by Referendum 49: the deposit of MVET revenue into the state's motor vehicle fund. In response to Heavey's request, a representative of the attorney general indicated that the attorney general would defend Referendum 49's constitutionality. The attorney general's position was that while CONST. art. II, § 40 (amend. 18) does not *require* MVET revenue to be deposited in the motor vehicle fund, it does not *preclude* deposit of this revenue into the fund.

Faced with this response, Heavey commenced this original action against Treasurer Murphy in our court·upon stipulated facts. We agreed to decide the case. *See* CONST.

art. IV, § 4; RAP 16.2. We also granted leave to the Washington Federation of State Employees and the Washington Education Association, siding with Heavey, and the Washington State Building and Construction Trades Council, the AFL-CIO, the Greater Seattle Chamber of Commerce, the Associated General Contractors of Washington, Snohomish County Committee for Improved Transportation, the Spokane Area Chamber of Commerce, and the Washington Public Ports Association, siding with Treasurer Murphy, to file amici curiae briefs.

## ANALYSIS

■ ■ Of the writ of mandamus, we have noted that "[a]rticle 4, section 4 of the state constitution gives this court original jurisdiction in mandamus as to all state officers. That jurisdiction is, however, nonexclusive and discretionary." *Department of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 251, 804 P.2d 1241 (1991) (citing *Holt v. Morris*, 84 Wn.2d 841, 845-46, 529 P.2d 1081 (1974), *overruled on other grounds by Wright v. Morris*, 85 Wn.2d 899, 540 P.2d 893 (1975)). We have written that "[w]here . . . the issues involve the constitutionality of a statute and matters relating to the expenditure of public funds, it is appropriate for us to exercise our original jurisdiction." *State Fin. Comm.*, 116 Wn.2d at 251 (citing *City of Tacoma v. O'Brien*, 85 Wn.2d 266, 268, 534 P.2d 114 (1975)). In light of the stipulation to facts between the parties, making it unnecessary for us to refer questions of fact in this case to a special master or to the superior court, *see* RAP 16.2(d), we believe this is an appropriate case in which to exercise our original jurisdiction.

■ Under the challenged section of Referendum 49 that amends RCW 82.44.110, the distribution of MVET revenue into various accounts is provided for, and this is Murphy's responsibility: "The state treasurer shall deposit the excise taxes collected under RCW 82.44.020(1) as follows . . . ." LAWS OF 1998, ch. 321, § 5(1). While we have written that "[a] writ of mandamus will not issue where the act to be

performed is a discretionary act[,]" *State Fin. Comm.*, 116 Wn.2d at 251 (citing *Peterson v. Department of Ecology*, 92 Wn.2d 306, 314, 596 P.2d 285 (1979)), the use of the word "shall" makes it clear that Murphy is charged with a mandatory duty. *See State Fin. Comm.*, 116 Wn.2d at 252 (citing *Spokane County ex rel. Sullivan v. Glover*, 2 Wn.2d 162, 169, 97 Wn.2d 628 (1940)). Thus mandamus is an appropriate remedy, and we, therefore, must determine if the writ should issue.

Heavey's primary argument is that RCW 82.44.110, as most recently amended by Referendum 49, violates CONST. art. II, § 40 (amend. 18) by requiring MVET revenue to be deposited into the motor vehicle fund. Thus, he contends that "[m]andamus should issue prohibiting the state treasurer from depositing into the motor vehicle fund *any* portion of the motor vehicle excise tax imposed by RCW 82.44-.020." Pet'r's Br. at 48 (emphasis added). RCW 82.44.020(1) provides that "[a]n excise tax is imposed for the privilege of using in the state any motor vehicle, except those operated under reciprocal agreements, the provisions of RCW 46.16.160, or dealer's licenses. The annual amount of such excise tax shall be two and two-tenths percent of the value of such vehicle." This tax is perhaps best known by what one receives in exchange for paying it: motor vehicle license tabs.

Although deposits of MVET revenue into the motor vehicle fund under RCW 82.44.110 actually predate the passage of Referendum 49, the referendum amended RCW 82.44.110 by altering the percentage of this revenue to be deposited into the motor vehicle fund.[1] Prior to passage of the referendum, 13.82% of the MVET revenue was deposited into the motor vehicle fund. *See* LAWS OF 1998, ch. 321, § 5(1)(a)-(c). Passage of the referendum had the effect of increasing the deposit into the fund to 21.426% of the MVET revenue through June 30, 1999, and then to 25.195% thereafter. *See*

---

[1]*See* LAWS OF 1998, ch. 321, § 5. It is important to note that all of the other sections of Referendum 49, such as one providing for a $30 taxpayer credit against the MVET imposed "on each personal-use motor vehicle," LAWS OF 1998, ch. 321, § 2, are not challenged here.

LAWS OF 1998, ch. 321, § 5(1)(a)-(c), (m). Under Heavey's argument, the amount of the increase is irrelevant—for he contends that not even a penny's worth of MVET revenue can be deposited in the motor vehicle fund.

As noted above, Heavey's contention is that RCW 82.44.110, as amended by Referendum 49, runs afoul of CONST. art. II, § 40 (amend. 18). The constitutional provision is as follows:

HIGHWAY FUNDS. All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes. Such highway purposes shall be construed to include the following:

(a) The necessary operating, engineering and legal expenses connected with the administration of public highways, county roads and city streets;

(b) The construction, reconstruction, maintenance, repair, and betterment of public highways, county roads, bridges and city streets; including the cost and expense of (1) acquisition of rights-of-way, (2) installing, maintaining and operating traffic signs and signal lights, (3) policing by the state of public highways, (4) operation of movable span bridges, (5) operation of ferries which are a part of any public highway, county road, or city street;

(c) The payment or refunding of any obligation of the State of Washington, or any political subdivision thereof, for which any of the revenues described in section 1 may have been legally pledged prior to the effective date of this act;

(d) Refunds authorized by law for taxes paid on motor vehicle fuels;

(e) The cost of collection of any revenues described in this section:

*Provided*, That this section shall not be construed to include revenue from general or special taxes or excises not levied primarily for highway purposes, or apply to vehicle operator's

license fees or any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon, or fees for certificates of ownership of motor vehicles.

It is undisputed that the "special fund" referred to in the first sentence of CONST. art. II, § 40 (amend. 18) is the motor vehicle fund. *See Automobile Club v. City of Seattle*, 55 Wn.2d 161, 166, 346 P.2d 695 (1959); RCW 46.68.070. This case turns on the meaning of the following words in the proviso to CONST. art II, § 40: "[T]his section shall not be construed to . . . apply to . . . any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon . . . ." There is no dispute over the fact that these words encompass the present-day MVET.[2] The dispute arises over whether this proviso means that the motor vehicle fund can or cannot include MVET revenue. Heavey argues that it cannot, and Murphy contends otherwise.

The implications of Heavey's argument extend far beyond Referendum 49. Murphy points out that just three years after the passage of CONST. art. II, § 40 (amend. 18), the Legislature provided that fees for certificates of motor vehicle ownership be deposited into the motor vehicle fund. *See* LAWS OF 1947, ch. 164, § 7. This despite the fact that the proviso to CONST. art. II, § 40 (amend. 18) reads: "[T]his

---

[2]Heavey argues that the MVET also falls under the first part of the proviso, i.e., "excises not levied primarily for highway purposes." *See* Pet'r's Br. at 26-41. This argument conflicts with another of Heavey's arguments, based upon our holdings, that constitutional provisions shall not be interpreted either as "mere redundancies" or as "superfluous." Pet'r's Br. at 15 (citing *Farris v. Munro*, 99 Wn.2d 326, 333, 662 P.2d 821 (1983); *Sim v. Washington State Parks & Rec. Comm'n*, 90 Wn.2d 378, 383, 583 P.2d 1193 (1978)). Heavey does not attempt to reconcile these sound principles with any explanation as to why the MVET would somehow be excepted *twice* in the same sentence, once generally and once quite specifically, from the operation of CONST. art. II, § 40 (amend. 18). Even the amici aligned with Heavey do not make this argument, instead maintaining that "[t]he pertinent proviso . . . states that the preceding enacting clause: 'shall not be construed to include . . . any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon.' " Amicus Curiae Br. of Wash. Fed'n of State Employees & Wash. Educ. Ass'n at 4. This third formulation, however, reads the words "apply to" out of the proviso. We need not attempt to resolve this semantics disagreement, for any resolution would be immaterial to our result. The result in this case is the same whether the proviso is read as excepting the MVET generally and/or specifically.

section shall not be construed to . . . apply to . . . fees for certificates of ownership of motor vehicles." If Heavey's interpretation of this proviso's effect is correct, the deposit of these fees into the motor vehicle fund is as forbidden as the deposit of MVET revenue, and the Legislature has been violating the constitution for 52 years. Moreover, 10 years later, in 1957, we can find the Legislature providing for the deposit of MVET revenue into the motor vehicle fund. *See* LAWS OF 1957, ch. 128, § 1. In light of this fact, Heavey asserts that "[e]ach amendatory act beginning with LAWS OF 1957, Ch. 128, § 1 through LAWS OF 1998, Ch. 321, § 5 (Referendum Bill No. 49) . . . must now be held unconstitutional." Pet'r's Br. at 39.

■■■■ "A referendum or an initiative measure is an exercise of the reserved power of the people to legislate, and the people in their legislative capacity remain subject to the mandates of the Constitution." *Belas v. Kiga*, 135 Wn.2d 913, 920, 959 P.2d 1037 (1998) (citing *Gerberding v. Munro*, 134 Wn.2d 188, 196, 949 P.2d 1366 (1998); Philip A. Trautman, *Initiative and Referendum in Washington: A Survey*, 49 WASH. L. REV. 55, 63, 66, 70 (1973)). Moreover, "[t]he rules of statutory construction apply to initiatives as well as to legislative enactments." *Hi-Starr, Inc. v. Liquor Control Bd.*, 106 Wn.2d 455, 460, 722 P.2d 808 (1986) (citing *Department of Revenue v. Hoppe*, 82 Wn.2d 549, 552, 512 P.2d 1094 (1973)). We have previously written that "[a] statute is presumed constitutional and the parties challenging its constitutionality must demonstrate its unconstitutionality beyond a reasonable doubt. This standard is met if argument and research establish that there is *no* reasonable doubt the statute violates the Constitution." *Belas*, 135 Wn.2d at 920 (emphasis added) (citing *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998); *Granite Falls Library Capital Facility Area v. Taxpayers of Granite Falls Library Capital Facility Area*, 134 Wn.2d 825, 832-33, 953 P.2d 1150 (1998); *Sator v. Department of Revenue*, 89 Wn.2d 338, 346, 572 P.2d 1094 (1977)). This burden of proof is in keeping with the fact that "[t]he Legislature

possesses a plenary power in matters of taxation except as limited by the Constitution." *Belas*, 135 Wn.2d at 919. Indeed, "the constitution is not a grant but a restriction upon the legislative power, and . . . the power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state and federal constitutions." *State ex rel. Distilled Spirits Inst., Inc. v. Kinnear,* 80 Wn.2d 175, 180, 492 P.2d 1012 (1972) (citing *Clark v. Dwyer,* 56 Wn.2d 425, 353 P.2d 941 (1960)).

■ At the threshold, we must first address the question of whether the words in the proviso to CONST. art. II, § 40 (amend. 18) are ambiguous and thus necessitate judicial construction. We have written that "where the language of the enactment is plain, unambiguous, and well understood according to its natural and ordinary sense and meaning, the enactment is not subject to judicial interpretation." *Western Petroleum Importers, Inc. v. Friedt,* 127 Wn.2d 420, 423-24, 899 P.2d 792 (1995) (citing *City of Tacoma v. State,* 117 Wn.2d 348, 356, 816 P.2d 7 (1991)). Heavey argues that "[t]he language of the proviso, no less than that of the enacting clause, is sufficiently ambiguous as to require construction by this court."[3] Pet'r's Br. at 14-15. To bolster his argument he contends that "[t]he sentence concluding the enacting clause of Amend. 18, 'Such highway purposes shall be construed to include the following,' has twice been interpreted by this Court as requiring judicial construction to ascertain its meaning." Pet'r's Br. at 14 (citing *Washington State Highway Comm'n v. Pacific Northwest Bell Tel. Co.,* 59 Wn.2d 216, 222, 367 P.2d 605 (1961); *Automobile Club,* 55 Wn.2d at 167-69).

Heavey misreads our past decisions. In *Automobile Club* this court was merely seeking to apply the plain meaning of the words "highway purposes," in response to the City of Seattle's attempt to pay, using moneys that had been al-

---

[3]Yet he also asserts that "the *unambiguous* language of the Amend. 18 proviso prohibits deposit of MVET revenues into the Motor Vehicle Fund." Pet'r's Br. Answering Amicus Curiae Aligned with Resp't at 1-2 (emphasis added).

located to it from the motor vehicle fund, for "a certain death and bodily injury judgment rendered against the city, by reason of the negligence of its bridge tenders in the operation of the Montlake bridge." *Automobile Club*, 55 Wn.2d at 162. Far from concluding that the words "highway purposes" were ambiguous, we wrote that the words were to be understood "in their ordinary meaning and not in any technical sense." *Automobile Club*, 55 Wn.2d at 167. Accordingly, we concluded that Seattle's expenditure was not a permissible "highway purpose" under CONST. art. II, § 40 (amend. 18). *See Automobile Club*, 55 Wn.2d at 168 ("[W]e think it was the intention of the people to limit expenditures from the motor vehicle fund to those things which would directly or indirectly benefit the highway system. Clearly, the payment of a tort judgment does not fall within this category.").

In *Highway Commission* we simply pointed to *Automobile Club* to illustrate its point that "[t]he constitution does not grant to the *legislature* the power or authority to define, by legislative enactment, the meaning and scope of a constitutional provision[,]" because the "[t]he construction of the meaning and scope of a constitutional provision is exclusively a *judicial* function." *Highway Comm'n*, 59 Wn.2d at 222 (emphasis added). In *Highway Commission* we were actually applying the word "exclusive" in light of its "usual, ordinary, and nontechnical meaning." *Highway Comm'n*, 59 Wn.2d at 220 (citing *Automobile Club*, 55 Wn.2d at 167; *Parkhurst v. City of Everett*, 51 Wn.2d 292, 294, 318 P.2d 327 (1957)). We did not identify any ambiguity in doing so.

Lest there be any confusion, we have expressly stated of the words "highway purposes" in CONST. art. II, § 40 (amend. 18) that they are "free of ambiguity," *State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 558, 452 P.2d 943 (1969), noting that

> the words of this provision are *unambiguous*, and in their commonly received sense lead to a reasonable conclusion, that the people in framing this provision intended to insure that certain fees and taxes paid by them . . . should be used to

provide roads, streets and highways on which they could drive[.]

*State ex rel. O'Connell*, 75 Wn.2d at 559 (emphasis added). Even *had* this court ever declared that part of the *main body* of CONST. art. II, § 40 (amend. 18) was ambiguous, it is unclear why that would have supported Heavey's conclusion that the language of the *proviso* in question is ambiguous. In any event, CONST. art. II, § 40 (amend. 18) "should be read according to the natural and most obvious import of its framers, without resorting to subtle and forced construction for the purpose of limiting or extending its operation." *State ex rel. O'Connell*, 75 Wn.2d at 558 (citing *State ex rel. Torreyson v. Grey*, 21 Nev. 378, 32 P. 190 (1893)).

We do not agree that "the language of the enactment is susceptible to more than one reasonable interpretation." *State v. Thorne*, 129 Wn.2d 736, 763 n.6, 921 P.2d 514 (1996) (citing *State ex rel. Royal v. Board of Yakima County Comm'rs*, 123 Wn.2d 451, 459, 869 P.2d 56 (1994)). Accordingly, we do not accept Heavey's invitation to examine evidence, such as the 1944 Voter's Pamphlet, of the intent behind CONST. art. II, § 40 (amend. 18). *See Thorne*, 129 Wn.2d at 763 (it is only when "there is some ambiguity in the language . . . [that] the intent behind the enactment becomes relevant") (citing *City of Spokane v. Taxpayers of City of Spokane*, 111 Wn.2d 91, 97-98, 758 P.2d 480 (1988)). That eliminates the bulk of Heavey's argument.

■ ■ Heavey is correct in noting that "[c]onstitutional provisions should be construed so that no portion is rendered superfluous." Pet'r's Br. at 15 (citing *Sim*, 90 Wn.2d at 383). He writes that "[t]o construe the Amend. 18 proviso as permitting, but not requiring, that revenue from the sources specified in the proviso be deposited into the special fund for highway purposes, would render the proviso superfluous and a mere redundancy." Pet'r's Br. at 21. It is not at all clear why this would be the case. One can give full effect to the proviso to CONST. art. II, § 40

(amend. 18) and simply conclude that it was incorporated so as "to preclude a misinterpretation of the enacting clause that would extend it beyond its intended purview." Resp't's Br. at 28. Far from being superfluous, this language thus serves an important end.

Whether the proviso to CONST. art. II, § 40 (amend. 18) is read as "this section shall not be construed to include revenue from" the MVET, or "this section shall not be construed to . . . apply to" the MVET, it seems clear that the result would be the same—for the proviso was not intended to " 'enlarge the enactment to which it is appended so as to operate as a substantive enactment itself.' "[4] *In re Estate of Hoss*, 59 Wash. 360, 363, 109 P. 1071 (1910) (quoting approvingly 26 AM. & ENG. ENCY. LAW 678 (2d ed.)). Rather, it "is a restraint or limitation upon, *and not an addition to*, that which precedes it." *State v. Collins*, 94 Wash. 310, 313, 162 P. 556 (1917) (emphasis added). The proviso simply placed exceptions outside of the preceding enacting clause, making it clear that the MVET tax was not among "[a]ll fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes" whose revenues were required to "be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes." CONST. art. II, § 40 (amend. 18).

In sum, the language from the enacting clause *requires only the deposit* of certain revenue into the motor vehicle fund and *limits their expenditure*. If, as a result of the proviso, this language does not "apply to" or "include" MVET revenue, the logical import of such an exception is that the

---

[4]Accordingly, even if the MVET were—as Heavey argues—intended to be excepted from CONST. art. II, § 40 (amend. 18) *twice* in the same proviso, once generally as an "excise[] not levied primarily for highway purposes" and once specifically as "any excise tax imposed upon motor vehicles or the use thereof in lieu of a property tax thereon," the result would be the same. The irrelevancy of this distinction would not apply, however, were we to read the word "section" as "fund"—as Heavey would have us do. Such a reading clearly does not follow from the relationship between the enacting clause and the proviso.

deposit of MVET revenue into the motor vehicle fund is simply *not required* and its expenditure *not limited* by the terms of the enacting clause. It is not reasonable, however, to believe that where a practice is *not required* it is necessarily *forbidden*, or that, quite paradoxically, by expressly *not being limited* the expenditure of MVET revenue is somehow *limited*. This "subtle and forced construction" is simply not persuasive. *State ex rel. O'Connell*, 75 Wn.2d at 558. "[A] statute cannot be judicially declared [to be] beyond the power of the legislature to enact unless in conflict with some *specific* or *definite* provision of the constitution." *Gruen v. Washington State Tax Comm'n*, 35 Wn.2d 1, 7, 211 P.2d 651 (1949) (emphasis added) (citing *State v. Emonds*, 107 Wash. 688, 182 P. 584 (1919)), *overruled on other grounds by State ex rel. Wash. State Fin. Comm. v. Martin*, 62 Wn.2d 645, 384 P.2d 833 (1963). Heavey, in short, has not met his burden of demonstrating that conflict, and his argument, while sincerely made, leaves reasonable doubt in its wake. *Belas*, 135 Wn.2d at 920.

In conclusion, we think a quote from Justice Hale puts it best: "There is nothing unconstitutional about common sense." *State v. Dixon*, 78 Wn.2d 796, 798, 479 P.2d 931 (1971). Common sense guides us in finding no violation in RCW 82.44.110, as last amended by Referendum 49 (LAWS OF 1998, ch. 321, § 5), of a constitutional amendment that "was designed to insure that the motor vehicle fund would be used exclusively for highway purposes." *Automobile Club*, 55 Wn.2d at 166 (citing *State ex rel. Bugge v. Martin*, 38 Wn.2d 834, 232 P.2d 833 (1951)).

■ For reasons stated above, we conclude that RCW 82.44.110 passes muster under CONST. art. II, § 40 (amend. 18), and decline to grant a writ of mandamus forbidding Treasurer Murphy from fulfilling his duties under the statute. Whether this law is good or bad public policy is not for us to say. Our task is simply to determine if it is constitutional. We have concluded that it is, and we need say nothing further.

GUY, C.J., and DURHAM, SMITH, JOHNSON, MADSEN, SANDERS, and IRELAND, JJ., concur.

TALMADGE, J. (concurring) — I generally concur with the majority's analysis of petitioner Heavey's constitutional argument. However, petitioner Heavey has raised appropriate policy questions regarding Referendum 49. From the standpoint of fiscal policy, the Legislature's decision to apply motor vehicle excise tax (MVET) revenues to transportation purposes diverts millions of dollars from the General Fund to the dedicated fund for highway needs created by article II, section 40 (amendment 18) of the Washington Constitution. In effect, the Legislature decided to rob Peter to pay Paul. Transportation services are important, but Referendum 49 is enacted at a time when there are demands on the General Fund for needed services such as common school education, including higher salaries for educational staff, social services, and higher education. This fiscal policy hardly seems wise. Moreover, the combined effect of the fiscal restraints of Initiative 601 and Referendum 49 will pinch services paid out of the General Fund ever more tightly in the years ahead.

Ironically, the persons arguing for the passage of the Eighteenth Amendment and the creation of the dedicated highway fund tried to assure the people MVET revenues would not be diverted from the General Fund's educational purposes to other needs. The 1944 Voter's Pamphlet describes the proviso in the Eighteenth Amendment discussed by petitioner Heavey as "excepting from its provisions certain other designated fees and taxes." Ex. YY. This assurance now goes for naught.

In general, any dedicated funds, particularly constitutionally dedicated funds, are unwise fiscal policy. Needs change. Fiscal policy should be sufficiently flexible to meet changed conditions. Dedicated funds run counter to sensible fiscal policy.

However, even though the Legislature's decision to refer Referendum 49 to the people and to divert MVET monies

from the General Fund to transportation funding makes for risky public policy and poor fiscal practice, a bad decision by the Legislature or the people is not necessarily unconstitutional. For the reasons the majority has articulated here, the diversion of MVET revenues from the General Fund to the dedicated funds for highway purposes is not unconstitutional. There is nothing in the Eighteenth Amendment clearly barring such a practice. In the absence of an unconstitutional act, under our constitutional system of separation of powers, we must defer to the Legislature's policy judgment, even in the circumstances where we think the policy judgment is unwise. *City of Seattle v. Montana*, 129 Wn.2d 583, 592, 919 P.2d 1218 (1996) ("wisdom or necessity [of legislation] is a matter left exclusively to the legislative body.").