Honorable Gary Chandler State Representative, 13th District P.O. Box 40600
Dear Representative Chandler:
By letter previously acknowledged, you asked for an opinion on the following paraphrased question regarding Final Recommendation 17f of the Blue Ribbon Commission on Transportation:
 Does article II, section 40 (Amendment 18) of the Washington Constitution require that revenue generated by the tax described in Final Recommendation 17f only be used for highway purposes?
 BRIEF ANSWER
The enacting clause of article II, section 40 requires that the gas tax and any other tax levied for highway purposes be spent for highway purposes. A gas tax is a tax on the volume of gas, as opposed to the value of the gas. The proviso of article II, section 40 gives the Legislature broad power to enact other taxes which are not gas taxes — that are not subject to the enacting clause and are not required to be used for highway purposes. Final Recommendation 17f extends the retail sales tax to motor fuel with certain modifications. In light of these modifications, a court may conclude that Recommendation 17f imposes a gas tax, which must be used for highway purposes, instead of a sales tax.
 ANALYSIS
Article II, section 40 of the Washington Constitution was adopted in 1944 as Amendment 18 and, in pertinent part, provides:
 All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes. Such highway purposes shall be construed to include the following:
. . . .
 Provided, That this section shall not be construed to include revenue from general or special taxes or excises not levied primarily for highway purposes, or apply to vehicle operator's license fees or any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon, or fees for certificates of ownership of motor vehicles.
Const. art. II, § 40 (amend. 18) (emphasis added).
The enacting clause of article II, section 40 requires that all license fees for motor vehicles and all excise taxes on the sale, distribution, or use of motor vehicle fuel be used exclusively for highway purposes. However, the proviso excepts from this requirement revenue from "general or special taxes or excises not levied primarily for highway purposes". So the issue raised by your question is whether the taxes described in Final Recommendation 17f are general or special taxes or excises not levied primarily for highway purposes.
In State ex rel. Heavey v. Murphy, 138 Wn.2d 800, 982 P.2d 611
(1999), the Washington Supreme Court discussed article II, section 40 and the relationship of the proviso to the exacting clause.Heavey concerned the motor vehicle excise tax, which was covered by the proviso because it was a tax imposed on motor vehicles, or the use thereof, in lieu of a property tax. As such, article II, section 40 did not require the motor vehicle excise tax to be used for highway purposes. The question in Heavey was whether the motor vehicle excise tax could be used for highway purposes.
There are two principles of construction from Heavey that assist in answering your question. First, article II, section 40 "should be read according to the natural and most obvious import of its framers, without resorting to subtle and forced construction for the purpose of limiting or extending its operation". Heavey,138 Wn.2d at 811 (quoting State ex rel. O'Connell v. Slavin, 75 Wn.2d 554,558, 452 P.2d 943 (1969)). Second, the proviso is a limitation on the enacting clause of article II, section 40. In the words of the Court:
 [T]he proviso was not intended to enlarge the enactment to which it is appended so as to operate as a substantive enactment itself. Rather, it is a restraint or limitation upon, and not an addition to, that which precedes it. The proviso simply placed exceptions outside of the preceding enacting clause[.]
Heavey, 138 Wn.2d at 812 (citations omitted) (internal punctuation omitted) (footnote omitted). The Court summarized its conclusion about the proviso, stating:
 In sum, the language from the enacting clause requires only the deposit of certain revenue into the motor vehicle fund and limits their expenditure. If, as a result of the proviso, this language does not "apply to" or "include" MVET revenue, the logical import of such an exception is that the deposit of MVET revenue into the motor vehicle fund is simply not required and its expenditure not limited by the terms of the enacting clause.
Id. at 812-13 (emphasis added).
These principles from Heavey make it clear that the taxes described in the proviso need not be deposited in the motor vehicle fund and used only for highway purposes. This leads to the question of what kind of taxes are "general or special taxes orexcises not levied primarily for highway purposes"? Const. art. II, § 40.
Heavey teaches that the language of article II, section 40 should be read according to the natural and most obvious import of its framers. Accordingly, we look to contemporary dictionaries to determine how the framers of the Amendment, and the voters who approved it, would have understood the taxes to which the proviso applies: "general" taxes, "special" taxes, and "excises".
The New Century Dictionary, published in 1936, defines the term "general" as follows:
 Pertaining to, affecting, including, or participated in by, all members of a class or group (as, the general welfare); not partial or particular; also, of or pertaining to a whole region or body (as, a general election); . . . not specific or special; applicable to a variety of cases, or to most cases (as, general principles; a general rule); applicable to all of the individuals forming a class (as, a general term); also, not restricted to one class, field, department, etc. (as, the general public; a general
practitioner; a general dealer, store, or cargo)[.]
1 New Century Dictionary 643 (1936) (italics in original). The term "special" is defined as:
 Constituting a species or distinct sort (as, a special kind or form of key; a special type or pattern); of a distinct or particular kind or character; hence, being a particular one (as, a special day; of no special color; have you any special case in mind?); . . . having a particular function, purpose, application, etc. (as, a special
messenger or agent; a special train; special
legislation; special knowledge or study)[.]
Id. Vol. II at 1785 (italics in original). The term "excise" is defined as:
 An inland tax or duty on certain commodities, as spirits, tobacco, etc., levied on their manufacture, sale, or consumption within the country; also, a tax levied for a license to carry on certain employments, pursue certain sports[.]
Id. Vol. I at 527.
Based on its natural language, the scope of the proviso is broad. It includes general taxes, special taxes, and excise taxes when not levied primarily for highway purposes. Given this language, we conclude that the Legislature has broad power to levy taxes that fall within the language of the enacting clause but are not constitutionally required to be used for highway purposes.
In Heavey, the question was whether taxes falling within the proviso, such as the motor vehicle excise tax, could be deposited in the motor vehicle fund. As part of its analysis, the Court noted that the Legislature began depositing fees for certificates of motor vehicle ownership in the motor vehicle fund in 1947 — just three years after Amendment 18 was adopted. Heavey,138 Wn.2d at 807-08. This reflected contemporaneous understanding by the Legislature that taxes falling within the proviso could be deposited in the motor vehicle fund.
There is a similar contemporaneous understanding that general taxes on the sale of motor fuel were not required to be deposited in the motor vehicle fund and used only for highway purposes. In 1945, there were three taxes that might have fallen within the enacting clause of article II, section 40. The first tax was the gas tax. The gas tax was imposed, beginning in 1921, on distributors who sold liquid fuels in the state. The rate of the tax was one cent per gallon. Laws of 1921, ch. 173, § 2. By 1945, the tax had risen to five cents per gallon and was imposed on motor vehicle fuel sold, distributed, or used in the state by a distributor. Laws of 1933, ch. 58, § 5. There also was a five-cent-a-gallon tax on the use of fuel that fell outside the definition of motor vehicle fuel. Laws of 1941, ch. 127, § 3. These taxes were always deposited in the motor vehicle fund. This was true both before and after Amendment 18 was adopted. Laws of 1921, ch. 173, § 5; Laws of 1923, ch. 81, § 3; Laws of 1933, ch. 58, § 20; Laws of 1941, ch. 127, § 28.
The second tax was the motor vehicle excise tax. This tax was imposed on the privilege of using a motor vehicle in the state. In 1937, the annual amount of the tax was one and one-half percent of the fair market value of the vehicle. Laws of 1937, ch. 228, § 2. In 1937, the motor vehicle excise tax was devoted to support the common schools. Laws of 1937, ch. 228, § 12. In 1943, the motor vehicle excise tax was deposited in the motor vehicle excise fund. In 1945, after the passage of Amendment 18, this tax was distributed to the general fund, to cities and towns, and to support the common schools. Laws of 1945, ch. 152, § 14. This reflects the Legislature's understanding that the motor vehicle excise tax fell within the proviso and was not required to be used for highway purposes.
The third tax was the business and occupation (BO) tax. This tax was imposed on a number of business activities, including the activities of making retail and wholesale sales. The amount of the tax was the gross proceeds of sales multiplied by the rate of one-quarter of one percent. Laws of 1939, ch. 225, § 1(b), (e). Although the measure of the tax was the gross proceeds of sales, the law permitted a deduction for so "much of the sales price of motor vehicle fuel as constitutes the amount of tax imposed by the State of Washington or the United States government upon the sale thereof". Laws of 1935, ch. 180, § 12(e). The purpose of this deduction was to prevent a person from paying BO tax on the state and federal gas tax that was included in the selling price of the gas. So a person paying retail or wholesale BO tax paid the tax on the selling price of the motor fuel, less the amount of state and federal gas tax. None of the BO tax revenue was ever deposited in the motor vehicle fund, either before or after passage of Amendment 18. Laws of 1935, ch. 180, § 211; Laws of 1945, ch. 249, § 10.
The Legislature's treatment of the BO tax is significant. By its terms, the tax was imposed on the sale of motor vehicle fuel. So the BO tax expressly fell within the enacting clause of article II, section 40. But it also fell within the proviso, because it was a general tax that was not imposed primarily for highway purposes. And the Legislature, both at the time of the enactment of Amendment 18 and subsequently, has treated the BO tax on the sale of motor fuel as though it was governed by the provision, not the enacting clause.
It has been suggested that the fundamental non-diversionary purpose of Amendment 18 would be thwarted if the proviso were interpreted to permit any general, special, or excise taxes on motor vehicle fuel to be used for non-highway purposes, even if the taxes were not levied primarily for highway purposes. This suggestion overstates the importance of the non-diversionary purpose of the 18th Amendment. The proviso was an equally important part of the 18th Amendment.
We reach this conclusion for two reasons. First, Heavey
recognized that taxes falling within the proviso are not subject to the enacting clause. According to the Court, "the language from the enacting clause requires only the deposit of certain revenue into the motor vehicle fund and limits their expenditure. If, as a result of the proviso, this language does not `apply to' or `include' MVET revenue, the logical import of such an exception is that the deposit of MVET revenue into the motor vehicle fund is simply not required". Heavey, 138 Wn.2d at 812-13 (emphasis added).
The proviso is an exception to the enacting clause. But a broad reading of the non-diversionary purpose of the enacting clause of article II, section 40 would seem to require that the retail and wholesale BO tax on the sale of motor fuel must be used exclusively for highway purposes. Yet in 1945, after the passage of Amendment 18, the Legislature continued its past practice of depositing this BO tax in the general fund. Moreover, as far as we can determine, this BO tax has never been dedicated to highway purposes. In Heavey, the Court was skeptical of the claim by the plaintiff that the Legislature had been violating the constitution for over 50 years by depositing fees for certificates of motor vehicle ownership into the motor vehicle fund. Heavey,138 Wn.2d at 807-08. We believe the Court would also be skeptical of the claim that the Legislature has violated article II, section 40, for over 50 years, by using the retail and wholesale BO tax on the sale of motor fuel for non highway purposes
The second reason is the history of the 18th Amendment, which demonstrates that the proviso was important to the adoption of the 18th Amendment. In 1934, 1935, 1937, and 1941, Joint Resolutions were introduced in the Legislature to enact a constitutional amendment to prevent the diversion of funds from highways. Senate Joint Resolution 11, Senate Journal, 23d Leg., Ex. Sess. (1933), at 156; House Joint Resolution 23, House Journal, 24th Leg. (1935), at 416; Senate Joint Resolution 13, Senate Journal, 25th Leg. (1937), at 197; Senate Joint Resolution 6, Senate Journal, 27th Leg. (1941), at 92. None of these proposed constitutional amendments contained a proviso limiting the scope of the requirement that certain taxes be used for highway purposes. None of these proposed amendments was even brought up for a vote by the House or Senate where they were introduced. Printed Bills of the Legislature, 23rd Leg., SJR 11 (1933); 2 Printed Bills of the Legislature, 24th Leg., HJR 23 (1935); 2 Printed Bills of the Legislature, 25th Leg., SJR 13 (1937); 2 Printed Bills of the Legislature, 27th Leg., SJR 6 (1941). On the other hand, when House Joint Resolution 4, which became Amendment 18, was introduced in 1943 with the proviso, it passed easily. Laws of 1943, p. 938; House Joint Resolution 4, House Journal, 28th Leg. (1943), at 471-75; Engrossed House Joint Resolution 4, Senate Journal, 28th Leg. (1943), at 572. While the history of a constitutional amendment is of limited interpretive value, it does support the Washington Supreme Court's conclusion in Heavey that the proviso is an exception to the enacting clause.
In our judgment, a proper interpretation of article II, section 40 must give meaning to both the enacting clause and the proviso. The language of the enacting clause is broad. It applies to "all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel". Const. art. II, § 40. The proviso is also broad, excluding from the enacting clause "revenue from general or special taxes or excises not levied primarily for highway purposes". Id. Under the proviso, the Legislature has broad power to levy taxes that fall within the language of the enacting clause without their use being restricted to highway purposes. But this power is not unlimited. We do not believe that the Legislature could use the proviso as a basis to divert revenue from a gas tax, as understood by the framers of Amendment 18 and the voters who approved it, to a non-highway purpose.
We reach this conclusion for two reasons. First, this interpretation gives meaning to both the non-diversionary purpose of the enacting clause and the proviso. Second, it is consistent with the Voter's Pamphlet. In Heavey, the Court refused to examine the Voter's Pamphlet because the language of the proviso was unambiguous. Heavey, 138 Wn.2d at 809-11. This was certainly true in Heavey. The question there was whether motor vehicle excise tax could be deposited in the motor vehicle fund. The proviso unambiguously provided that the enacting clause did not apply to "any excise tax imposed on motor vehicles or the use thereof in lieu of a property tax thereon." Const. art. II, § 40. Nothing in the plain meaning of the proviso could be read to limit the Legislature's power to spend the motor vehicle excise tax.
Your question presents a more difficult interpretive issue because one must reconcile the broad language of the enacting clause with the broad language of the proviso. The Voter's Pamphlet reveals that the focus of the proponents of Amendment 18 and there were no opponents' statement in the Voters Pamphlet — was to prevent diversion of the gas tax. According to the Voter's Pamphlet:
 Between 1933 and 1943 in this state, in excess of $10,000,000 of your gas tax money was diverted away from street and highway improvement and maintenance for other uses. Several hundred miles of good, paved, safe highway would have been built to save money in motor vehicle operation had this special motor tax money been used as it was intended. These were highways and streets we paid for, but didn't get! Now you can stop further diversion.
Voter's Pamphlet (1943) (emphasis added).
The proponents of Amendment 18 did not want gas tax monies diverted to non-highway purposes. We think it unlikely that a court would permit such a diversion. For example, we doubt a court would approve if the Legislature repealed the gas tax and re-imposed the same tax provisions under a different label.
This naturally raises the question of what constitutes a "gas tax", the proceeds of which would be limited to highway purposes. Again, we look to the natural meaning of that term as the framers of Amendment 18 and the voters would have understood it. The gas tax has always been a per gallon tax. In 1945 it was five cents per gallon. Laws of 1933, ch. 58, § 5; Laws of 1941, ch. 127, § 3. Today the tax is 23 cents per gallon. RCW 82.36.025, 82.38.030. This differentiates the gas tax from the BO tax, which is based on the value — instead of the quantity of gasoline sold. In 1945 the rate was gross proceeds of sales — less the amount of state and federal gas tax — multiplied by the rate of one-quarter of one per cent. Laws of 1939, ch. 225, § 1(e); Laws of 1935, ch. 180, § 12(e). Today the tax rate is gross proceeds of sales — less the amount of state and federal gas tax — multiplied by the rate of .471 percent for retailing and .484 percent for wholesaling. RCW82.04.250, .270, .4285. It therefore seems to us that the chief distinguishing characteristic of a gas tax, as understood at the time Amendment 18 was enacted, is that it is a tax measured by the volume of the gas as opposed to its value.
To summarize, the enacting clause of article II, section 40 requires that the gas tax be spent for highway purposes. A "gas tax", for purposes of this provision, is a tax on the volume of gas as opposed to the value of the gas. The enacting clause also requires that any tax levied for highway purposes must be used for highway purposes. The proviso gives the Legislature broad power to enact other taxes — which are not gas taxes — that are not subject to the enacting clause and are not required to be used for highway purposes.
This brings us to Final Recommendation 17f of the Blue Ribbon Commission on Transportation, which states:
 Extend the sales tax to motor fuels. The commission adopted a sales tax on gas to be imposed on the wholesale commodity price of the fuel up to a set cap. The proceeds would be dedicated to all transportation purposes. The purpose of the price cap is to meet the commission's goal of predictability in revenues and to reduce the potential for disruptive price swings. The choice of commodity price as the revenue basis is intended to avoid imposing the new tax on top of the existing motor fuel taxes. The tax would be collected at the `rack' and paid by the distributor, like other fuel taxes.
As an initial matter, it would not violate article II, section 40 to extend the sales tax to motor fuel and use the proceeds of the tax for non-highway purposes. At present, a sales tax is imposed on retail sales at the rate of 6.5 percent of the selling price. RCW 82.08.020. The tax is imposed on the buyer and collected by the seller, who is responsible for remitting the tax to the state. RCW 82.08.050. The retail sales tax falls within the proviso. It is not a gas tax, because it is levied on the selling price of the fuel. It is a general tax, and it is not levied for highway purposes.
However, Final Recommendation 17f would not simply extend the sales tax to motor fuel. The tax contemplated by Final Recommendation 17f differs from the general sales tax in three important ways. First, it would be imposed on the wholesale price of the fuel up to a set cap. Second, the tax would be collected at the rack. Third, the recommended tax would be paid by the distributor.
The question is whether these special features of the proposed sales tax on motor fuel convert it from a sales tax that falls within the proviso of article II, section 40, into a gas tax that is subject to the enacting clause. We cannot say with certainty how a court would answer that question, but there are features of the proposed tax that could lead a court to conclude that the tax, if enacted as proposed, is a gas tax that must be used for highway purposes.
The first such feature is the cap on the proposed tax. In House Bill 1666, which we understand is the draft legislative provision that would implement the recommended proposed sales tax on motor fuel, is based "upon the commodity price of the fuel up to a cap of eighty cents". HB 1666, § 5(2), 57th Leg. (2001). Under HB 1666, if the commodity price of fuel is less than eighty cents, the tax is based on the price of the fuel. For example, if the commodity price of the fuel is sixty cents, the tax on one gallon would be 3.9 cents at the current sales tax rate of 6.5 percent (.60 x .065 = .039). If the commodity price of the fuel went up to seventy cents per gallon, the tax on one gallon would be 4.55 cents (.70 x .065 = .0455). But, if the price of fuel reaches the eighty cent cap, tax will be the same on a gallon of fuel regardless of the value of the fuel. At a commodity price of eighty cents, the tax on a gallon would be 5.2 cents (.80 x .065 = .052). The tax would continue to be 5.2 cents per gallon even if the commodity price of the fuel went above eighty cents per gallon.
Given these factors, a court could conclude that the proposed sales tax is really a gas tax imposed on a per gallon basis. This conclusion might be tempered if the commodity price of fuel were below eighty cents at the time of enactment so that the cap represented a ceiling that might come into play in the future. On the other hand, if the cap comes into play at the outset, a court could conclude that the sales tax is really just a gas tax called by another name, particularly if there is no significant prospect of a decrease in gas prices.
The other two features of the proposed sales tax differ from typical sales tax. The sales tax is usually imposed on the retail sales price. The tax proposed under Final Recommendation 17f would be imposed on the wholesale price. In addition, a sales tax is usually imposed on the buyer and collected by the seller. The tax proposed under Final Recommendation 17f would be imposed on the distributor. These differences are not necessarily significant. The proviso authorizes special taxes, and the Legislature has the flexibility to craft different kinds of taxes so long as they are not gas taxes. But to the extent the proposed sales tax departs from the way a sales tax usually operates, the differences may reinforce the argument that the tax is really a gas tax, not a sales tax.
To summarize, a court might construe the tax described in Final Recommendation 17f as a gas tax, although we cannot be certain on that point. However, details of the proposed tax could be changed to create a tax that would more clearly fall within the proviso to article II, § 40, so that the proceeds of the tax would not be limited to highway purposes.
We trust this analysis will be helpful to you.
Sincerely,
WILLIAM B. COLLINS Senior Assistant Attorney General