260 P.3d 956 (2011)
163 Wn. App. 722
WASHINGTON OFF-HIGHWAY VEHICLE ALLIANCE, NMA Trail Division; David S. Bowers; Kathleen J. Harrison; Jon O'Brien; and Kurt J. Kootnekoff, Appellants,
v.
STATE of Washington, and James L. McIntire, in his capacity as Treasurer thereof; State of Washington Parks and Recreation Commission, and Rex Derr, in his capacity as Director thereof, Respondents.
No. 40521-1-II.
Court of Appeals of Washington, Division 2.
September 13, 2011.
*958 James Laurence Buchal, Murphy & Buchal LLP, Portland, OR, for Appellant.
Steve Edwin Dietrich, Attorney General of Washington, Olympia, WA, for Respondent.
ARMSTRONG, J.
¶ 1 The Washington Off-Highway Vehicle Alliance (WOHVA), Northwest Motorcycle Association (NMA), and four individuals representing off-road vehicle users appeal the trial court's summary judgment dismissal of their complaint challenging the legislature's 2009 appropriation of motor vehicle fuel excise tax revenues for a park maintenance fund. We affirm.

FACTS

A. Statutory Background

¶ 2 Washington has levied an excise tax on the sale, distribution, or use of motor vehicle fuel since 1921. See Laws of 1921, ch. 173, § 2; RCW 82.36.020. In doing so, the legislature has distinguished between tax revenue generated by fuel used on state highways, county roads, and city streets ("highway" uses) and tax revenue related to fuel consumed *959 on other "nonhighway roads." See former RCW 46.09.020(7) (2004) (defining "nonhighway road"), recodified as RCW 46.09.310(5) (eff. July 1, 2011). The legislature has at various times enacted legislation that refunds a portion of the tax paid by those who use motor vehicle fuel for nonhighway uses. RCW 82.36.280.
¶ 3 By the 1940s, many Washington citizens were concerned about the use of highway-related fuel tax revenues for purposes other than building or improving roads and highways. See Laws of 1933, ch. 8 and 65 (spending fuel excise tax revenues on unemployment relief). In 1944, voters amended the state constitution to require that motor vehicle license fees and excise taxes on the sale, distribution, or use of motor vehicle fuel be used "exclusively for highway purposes." Wash. Const. art. II, § 40 (Amendment 18). "Highway purposes" expressly include "[r]efunds authorized by law for taxes paid on motor vehicle fuels." Wash. Const. art. II, § 40(d).
¶ 4 In 1971, the legislature enacted legislation regulating all-terrain vehicles (ATV) that required revenue generated by registration fees and fuel excise taxes paid by ATV users to be distributed to the Interagency Committee for Outdoor Recreation for maintaining ATV trails. Laws of 1971, 1st Ex. Sess., ch. 47, §§ 22, 27; former RCW 46.09.170 (1971), recodified as RCW 46.09.520 (eff. July 1, 2011). This legislation eliminated individual fuel tax refunds for ATV users. Laws of 1971, 1st Ex. Sess., ch. 47, §§ 20-22. In 1974, the legislature capped the refund at one percent of fuel tax revenues. Laws of 1974, 1st Ex. Sess., ch. 144, § 3.
¶ 5 In 1977, the legislature replaced the term "ATV" with "off-road vehicle" (ORV) and "nonhighway vehicle" and thus expanded the types of fuel uses that were considered nonhighway uses. Laws of 1977, 1st Ex. Sess., ch. 220. The legislature also appropriated parts of the now annual refund to additional state agencies, including the Washington State Parks and Recreation Commission (Parks), for recreational purposes other than ORV trails. Laws of 1977, 1st Ex. Sess., ch. 220, § 14; Laws of 1986, ch. 206, § 8.
¶ 6 In 1986, the legislature created two accounts in the state treasury: "the ORV and nonhighway vehicle account" and what it eventually termed the "nonhighway and off-road vehicle activities" or NOVA program account. Laws of 1986, ch. 206, § 8.[1] The allocation of the fuel tax refund between the two accounts was accomplished by former RCW 46.09.170(1) (1986), which set forth the percentages of the refund credited to each account. The refund allocated to the ORV and nonhighway vehicle account was apportioned directly to state agencies according to the distribution percentages indicated, while the NOVA account went to the interagency committee for distribution to projects through a competitive grants program. Former RCW 46.09.170(1). This NOVA funding was also governed by specific distribution requirements.
¶ 7 To address concerns that ORV users were receiving too much of the refund, the 2001 legislature funded a study to determine the relative proportion of motor vehicle fuel excise tax revenues attributable to various types of vehicles operating off-road or on nonhighway roads for recreational purposes. Laws of 2001, 2nd Spec. Sess., ch. 8, § 346. After that study showed that only 20 percent of fuel use went to ORV activities, the 2003 legislature amended the statute to allow the appropriation of NOVA funds for nonmotorized as well as motorized recreational uses. Laws of 2003, 1st Spec. Sess., ch. 26, §§ 366, 920. Nonmotorized uses include hiking, backpacking, mountain biking, cross-country skiing, snowshoeing, and equestrian activities. NOVA funding program subcategories now include trail and nonhighway road education and enforcement support activities, nonhighway road-related recreational facility funding, nonmotorized trail facility funding, and ORV trail facility funding.

B. NMA Litigation

¶ 8 The NMA and Byron Stuck, current president of WOHVA, challenged the 2003 appropriation for nonmotorized recreational *960 facilities and trails as an unconstitutional expenditure of fuel excise tax revenue. Nw. Motorcycle Ass'n (NMA) v. State Interagency Committee for Outdoor Recreation, 127 Wash.App. 408, 412, 110 P.3d 1196 (2005). The trial court granted the State's motion for summary judgment and Division Three affirmed:
At the time of the enactment of article II, section 40, Washington statutes already authorized refunds for nonhighway use of fuel.... Direct refunds to those who purchased gasoline for these nonhighway road trips is not practical due to the number of recipients and the difficulty in providing proof of the nonhighway use. Consequently, the legislature directed that one percent of the total gasoline excise taxes, representing nonhighway use of gasoline, would be refunded annually to a program that would benefit the nonhighway travelers who purchased the gasoline. RCW 46.09.170. The benefit comes in the form of ORV, nonmotorized, and nonhighway recreational uses.
This is a legislative policy, so our task is simply to determine if RCW 46.09.170 is constitutional.... [A]n annual one percent withdrawal from the motor vehicle fund (an estimate of the taxes paid for nonhighway gasoline use) falls within the refund authorized by article II, section 40. The legislature's dispersal of that refund through NOVA for the benefit of the affected taxpayers comes within its plenary powers of taxation. We find nothing in article II, section 40 that specifically prohibits the legislature from dispersing the "refund" as it sees fit.
NMA, 127 Wash.App. at 415-16, 110 P.3d 1196 (citations omitted). The court thus upheld the challenged legislation. NMA, 127 Wash.App. at 415-16, 110 P.3d 1196.

C. Excess Fund Balance Appropriations

¶ 9 At issue in NMA was the 2003 legislation amending former RCW 46.09.170(1) to allow the appropriation of NOVA funds to Parks to construct and upgrade trails and related facilities for both motorized and nonmotorized purposes. NMA, 127 Wash.App. at 411, 110 P.3d 1196 (citing Laws of 2003, 1st Sp. Sess., ch. 26, § 920). In a separate bill, the 2003 legislature added a new section to the statute that appropriated part of the "excess fund balance" in the ORV account directly to Parks. Laws of 2003, ch. 25, § 922.
¶ 10 In 2004, the legislature amended this provision to refer to the NOVA account rather than the ORV account, and it distributed the excess fund balance as follows:
During the 2003-05 fiscal biennium, the legislature may appropriate such amounts as reflect the excess fund balance in the NOVA account to the interagency committee for outdoor recreation, the department of natural resources, the department of fish and wildlife, and the state parks and recreation commission. This appropriation is not required to follow the specific distribution specified in subsection (2) of this section.
Laws of 2004, ch. 105, § 6 (former RCW 46.09.170(4) (2004)). The State explains that an excess fund balance appropriation reduces the competitive grant program in favor of a direct appropriation that does not have to abide by any distribution requirements.
¶ 11 In 2007, the legislature replaced the Interagency Committee for Outdoor Recreation with the Recreation and Conservation Funding Board (Board) as the administrator of NOVA grants. Laws of 2007, ch. 241, §§ 15, 16(2)(d). It again authorized the appropriation of the excess fund balance in the NOVA account, but this time the appropriation went to:
the department of natural resources for planning and designing consistent off-road vehicle signage at department-managed recreation sites, and for planning recreation opportunities on department-managed lands in the Reiter block and Ahtanum state forest.
Laws of 2007, ch. 522, § 953.
¶ 12 In 2009, the legislature faced a revenue shortfall, and Parks anticipated the closure of 15 state parks in addition to other program reductions. By the end of the session, the legislature had reduced Parks' general fund appropriation by $52 million from the previous biennium. In a separate section of the budget bill, the legislature appropriated *961 the excess fund balance in the NOVA account as follows:
[T]o the department of natural resources ((for planning and designing)) to install consistent off-road vehicle signage at department-managed recreation sites, and ((for planning)) to implement the recreation opportunities on department-managed lands in the Reiter block and Ahtanum state forest, and to the state parks and recreation commission for maintenance and operation of parks and to improve accessibility for boaters and off-road vehicle users. This appropriation is not required to follow the specific distribution specified in subsection (2) of this section.
Laws of 2009, ch. 564, § 944(4) (amending former RCW 46.09.170(4)). This appropriation to Parks, referred to hereafter as the "2009 appropriation," amounted to $9.56 million. Laws of 2009, ch. 564, § 303. Parks understood that these funds were intended to replace part of the reduction in its general fund appropriation, and it allocated the entire amount to employee salaries and benefits. The 2009 appropriation was in addition to an appropriation from the NOVA account to the Board's grant program and to separate funds distributed to the ORV and nonhighway vehicle account. Laws of 2009, ch. 564, §§ 303-04, 307-08.
¶ 13 WOHVA, the NMA, and four individuals challenged the 2009 appropriation under the Administrative Procedures Act (APA), chapter 34.05 RCW. After the parties filed cross motions for summary judgment, the trial court granted the State's motion, denied WOHVA's motion, and dismissed the complaint with prejudice.
¶ 14 Before WOHVA filed its appeal, the legislature again amended former RCW 46.09.170(4):
During the 2009-2011 fiscal biennium, the legislature may appropriate such amounts as reflect the excess fund balance in the NOVA account to the department of natural resources to install consistent off-road vehicle signage at department-managed recreation sites, and to implement the recreation opportunities on department-managed lands in the Reiter and Ahtanum state forest, and to the state parks and recreation commission. The legislature finds that the appropriation of funds from the NOVA account during the 2009-2011 fiscal biennium for maintenance and operation of state parks ((and)) or to improve accessibility for boaters and off-road vehicle users at state parks will benefit boaters and off-road vehicle users and others who use nonhighway and nonmotorized recreational facilities. ((This appropriation is)) The appropriations under this subsection are not required to follow the specific distribution specified in subsection (2) of this section.
Laws of 2010, 1st Sp. Sess., ch. 37, § 936.

ANALYSIS

I. Collateral Estoppel
¶ 15 The State argues that collateral estoppel bars this court's substantive consideration of WOHVA's arguments because Division Three rejected them in the NMA decision. The doctrine of collateral estoppel prevents a second litigation of issues between the parties, even though a different claim or cause of action is asserted. Rains v. State, 100 Wash.2d 660, 665, 674 P.2d 165 (1983). We review de novo whether collateral estoppel precludes relitigation of an issue. Lemond v. Dep't of Licensing, 143 Wash.App. 797, 803, 180 P.3d 829 (2008).
¶ 16 The party asserting collateral estoppel must prove that (1) the identical issue was decided in the prior adjudication, (2) the prior adjudication resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice. Williams v. Leone & Keeble, Inc., 171 Wash.2d 726, 730-32, 254 P.3d 818 (2011); State v. Vasquez, 148 Wash.2d 303, 308, 59 P.3d 648 (2002).
¶ 17 At issue in NMA was whether the legislature could appropriate part of the annual fuel tax refund in former RCW 46.09.170 (2003) for nonmotorized purposes. NMA, 127 Wash.App. at 412, 110 P.3d 1196. The court determined that article II, section *962 40 authorized the appropriation and that the legislature could disburse it as deemed appropriate. NMA, 127 Wash.App. at 416, 110 P.3d 1196. The State contends that the refund statute and article II, section 40 have not changed since the NMA decision and that the specific purpose of the appropriation made from NOVA funds is irrelevant.
¶ 18 Former RCW 46.09.170 has in fact been amended several times since 2003. Although the State claims that both the appropriation in NMA and the 2009 appropriation stemmed from the excess fund balance in the NOVA account, this does not appear to be the case. At issue in NMA was legislation amending former RCW 46.09.170(1) to allow NOVA funding to be used for nonmotorized purposes, and that subsection required the expenditure of such funds according to a specific distribution scheme. NMA, 127 Wash.App. at 411, 110 P.3d 1196 (citing Laws of 2003, 1st Sp. Sess., ch. 26, § 920).[2] By contrast, the 2009 appropriation came from the NOVA excess fund balance and was not so restricted. WOHVA argues that the purpose and effect of the two sets of legislation differ because the 2009 appropriation provides none of the benefits to nonhighway travelers who use gasoline that the NMA court cited in upholding the 2003 legislation. See NMA, 127 Wash.App. at 416, 110 P.3d 1196. The State counters that under NMA, the specific purpose of the appropriation is irrelevant. See NMA, 127 Wash.App. at 416, 110 P.3d 1196. Even if the State is correct, WOHVA's current complaint concerns a different and broader appropriation of tax revenues that prohibits our application of collateral estoppel. Consequently, we turn to the merits of the appeal.

II. Constitutionality of 2009 Appropriation

A. Standard of Review

¶ 19 WOHVA seeks reversal of the trial court's summary judgment in the State's favor. Once again, our review is de novo. Pierce County v. State, 150 Wash.2d 422, 429, 78 P.3d 640 (2003). Summary judgment is properly granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).
¶ 20 WOHVA brought its complaint under the APA as a challenge to the constitutionality of agency action. See RCW 34.05.570(4)(c)(i). The burden of demonstrating the invalidity of agency action is on the party asserting the invalidity. RCW 34.05.570(1)(a).
¶ 21 The agency action here is Parks' allotment of the 2009 appropriation. Allotments are an agency's detailed plans for expenditures and must comply with the terms, limits, or conditions of legislative appropriations. RCW 43.88.110(1). WOHVA does not assert that Parks' plan of expenditure is inconsistent with the appropriation. Its real challenge is to the legislature's amendment of former RCW 46.09.170(4) and its 2009 appropriation of NOVA funds to pay for general agency expenditures.
¶ 22 In Washington, a statute is presumed constitutional and a challenger must prove it unconstitutional beyond a reasonable doubt. Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State, 170 Wash.2d 599, 605, 244 P.3d 1 (2010). In this context, "beyond a reasonable doubt" does not refer to an evidentiary standard. Sch. Dists.' Alliance, 170 Wash.2d at 606, 244 P.3d 1. Rather, it means that, based on respect for the legislature, courts will not strike a duly enacted statute unless they are "`fully convinced, after a searching legal analysis, that the statute violates the constitution.'" Sch. Dists.' Alliance, 170 Wash.2d at 606, 244 P.3d 1 (quoting Island County v. State, 135 Wash.2d 141, 147, 955 P.2d 377 (1998)); see also State ex rel. Heavey v. Murphy, 138 Wash.2d 800, 813, 982 P.2d 611 (1999) (court cannot declare statute invalid unless it conflicts with specific or definite provision of state constitution).
¶ 23 Determining the meaning and scope of a constitutional provision is a judicial function. Heavey, 138 Wash.2d at 810, *963 982 P.2d 611. When construing constitutional provisions, courts look first to the text's plain language and give that language a reasonable interpretation. Wash. Water Jet Workers Assoc. v. Yarbrough, 151 Wash.2d 470, 477, 90 P.3d 42 (2004). The legislature is entitled to great deference and it is our duty to uphold a statute as constitutional whenever possible. Sch. Dists.' Alliance, 170 Wash.2d at 608, 244 P.3d 1; In re Pers. Restraint of Matteson, 142 Wash.2d 298, 307, 12 P.3d 585 (2000).
¶ 24 The heavy burden of proving a statute unconstitutional reflects that "`[t]he Legislature possesses a plenary power in matters of taxation except as limited by the Constitution.'" Heavey, 138 Wash.2d at 808-09, 982 P.2d 611 (quoting Belas v. Kiga, 135 Wash.2d 913, 919, 959 P.2d 1037 (1998)). In addition, power over appropriations remains with the legislature. Ortblad v. State, 85 Wash.2d 109, 116, 530 P.2d 635 (1975); see also SEIU Healthcare 775NW v. Gregoire, 168 Wash.2d 593, 616, 229 P.3d 774 (2010) (appropriation of state funds is up to legislature, subject to gubernatorial veto), Madsen, C.J., dissenting. "The decision to create a program as well as whether and to what extent to fund it is strictly a legislative prerogative." Pannell v. Thompson, 91 Wash.2d 591, 599, 589 P.2d 1235 (1979). Courts will not direct the legislature to appropriate funds unless creating a program and/or funding it is constitutionally mandated. Pannell, 91 Wash.2d at 599, 589 P.2d 1235.

B. Refund Authorized by Law

¶ 25 WOHVA's central argument is that funds initially allocated to the NOVA program account cannot be diverted to remedy a budgetary shortfall and still constitute a "refund authorized by law" within the meaning of article II, section 40.
¶ 26 Washington courts have set aside as unconstitutional various legislative attempts to expend motor vehicle fund revenues where they conflicted with the "highway purposes" requirement in article II, section 40. See State ex rel. O'Connell v. Slavin, 75 Wash.2d 554, 452 P.2d 943 (1969) (public transportation study was not "highway purpose" for which motor vehicle excise tax revenues could be used); Wash. State Highway Comm'n v. Pac. Nw. Bell Tel. Co., 59 Wash.2d 216, 367 P.2d 605 (1961) (cost of relocating utility facilities along highway right-of-way was not expenditure "exclusively for highway purposes" that could constitutionally be taken out of state motor vehicle fund); Auto. Club of Wash. v. City of Seattle, 55 Wash.2d 161, 346 P.2d 695 (1959) (payment of tort judgment against city for negligent operation of bridge was not highway purpose justifying expenditure of gasoline excise tax funds).
¶ 27 None of these cases, however, discussed the only provision of article II, section 40 under which the 2009 appropriation can be justified; i.e., the provision that "[r]efunds authorized by law for taxes paid on motor vehicle fuels" are highway purposes for which such taxes may be expended. Wash. Const. art. II, § 40(d). Division Three explained the intent behind this provision in the NMA decision:
By including "refunds authorized by law for taxes paid on motor vehicle fuels" as a "highway purpose," the framers apparently intended to return the share of those taxes paid by drivers who expended fuel driving on roadways other than public highways, roads, and streets. Thus, the refund is paradoxically a "highway purpose" for taxes levied on nonhighway driving.
NMA, 127 Wash.App. at 414, 110 P.3d 1196 (citation omitted).
¶ 28 WOHVA insists that the 2009 appropriation cannot constitute a refund under section 40(d) because it provides no benefit to those who paid the taxes being refunded, particularly ORV users. WOHVA argues that the word "refund" plainly conveys giving money back to the citizens who paid it. The NMA court agreed that the reference to "refund" in article II, section 40 is unambiguous:
A refund is generally "a sum that is paid back." Article II, section 40 merely provides that this sum must be authorized by law and that it is paid back from taxes paid for gasoline. The clear inference is that *964 the sum should be returned to those people who used the gasoline for nonhighway purposes.
NMA, 127 Wash.App. at 415, 110 P.3d 1196 (citation omitted). According to WOHVA, "[t]he Legislature has ample power to create any sort of refund of motor vehicle gasoline excise tax revenues it desires . . . but a real `refund' that returns consideration to the actual taxpayers must be involved." Br. of Appellant at 21. Otherwise, highway funds are being used for other public purposes in violation of article II, section 40. See NMA, 127 Wash.App. at 416, 110 P.3d 1196 (legislature's dispersal of the refund authorized by article II, section 40 through NOVA "for the benefit of the affected taxpayers" comes within its plenary powers of taxation).
¶ 29 WOHVA asserts that central to NMA was that former RCW 46.09.170 tied the allocation of refunded benefits to the categories of uses established in the fuel use survey through the funding percentages specified in the statute. As WOHVA points out, agencies that receive funds under the statute are advised "to ensure that overall expenditures reflect consideration of the results of the most recent fuel use study." Former RCW 46.09.280(4), recodified as RCW 46.09.340(4) (eff. July 1, 2011). It is true that the legislation at issue in NMA concerned that part of former RCW 46.09.170 containing the distribution requirements, while the 2009 appropriation concerns the excess fund balance, which is not so restricted. WOHVA asserts that the very notion of an excess fund balance is incompatible with the concept of a refund and that unlike NMA, which concerned the dispersal of a refund through the NOVA program, this case concerns an unlawful diversion of funds from the NOVA program to replace a reduction in the general fund. See NMA, 127 Wash.App. at 415, 110 P.3d 1196 ("our only concern is whether the funds transferred to the NOVA program qualify as refunds authorized by law"). As WOHVA adds, the 2009 appropriation did not include the word "refund."
¶ 30 WOHVA's protests notwithstanding, we are persuaded that the 2009 appropriation of the excess fund balance falls within the refund that the statute authorizes. Former RCW 46.09.170 is entitled "Refunds from motor vehicle fundDistribution Uses." Subsection (1) outlines the manner in which the state treasurer is to collect the one percent refund from the motor vehicle fund, subsection (2) shows how the treasurer is to place these funds into the general fund by dividing it between the ORV and NOVA accounts and among various state agencies, subsection (3) sets limits on an agency's administrative expenses in distributing those funds, and subsection (4) explains how the excess fund balance from the NOVA account is to be distributed. That balance is part of the refund the statute addresses without being separately identified as such. See Truly v. Heuft, 138 Wash.App. 913, 922, 158 P.3d 1276 (2007) (when interpreting a statute, we must consider it as a whole). Furthermore, we note that WOHVA made no attempt to challenge previous appropriations from the excess fund balance as unconstitutional per se.
¶ 31 WOHVA also argues that the 2009 appropriation cannot be a lawful refund under article II, section 40 because funding for general park maintenance and operation is not funding for highway purposes. The State responds that if the appropriation is part of a refund authorized by law, it is funding for a highway purpose, and the appropriated funds may be spent on anything necessary to carry out that purpose. See Slavin, 75 Wash.2d at 558, 452 P.2d 943 (lest the term "highway purposes" in article II, section 40 be too narrowly construed, the people have defined its scope in the succeeding paragraphs); NMA, 127 Wash.App. at 414, 110 P.3d 1196 (article II, section 40(d) refund is paradoxically a "highway purpose" for taxes levied on nonhighway driving). As the NMA court observed:
Giving the appropriate deference, we conclude that an annual one percent withdrawal from the motor vehicle fund (an estimate of the taxes paid for nonhighway gasoline use) falls within the refund authorized by article II, section 40. . . . We find nothing in article II, section 40 that specifically prohibits the legislature from dispersing the "refund" as it sees fit.
NMA, 127 Wash.App. at 416, 110 P.3d 1196.
¶ 32 WOHVA rejects such a generous reading of article II, section 40 and urges us *965 to "police" the legislature's dispersal of the excise tax refund to ensure that the legislative scheme is consistent with the constitutional requirement that the money be refunded. See Pannell, 91 Wash.2d at 599, 589 P.2d 1235 (courts will not direct legislature unless funding of program is constitutionally mandated). The State responds that any suggestion that courts should evaluate whether each appropriation of the former RCW 46.09.170(1) refund sufficiently benefits the underlying taxpayers is antithetical to the legislature's plenary power in the areas of taxation and appropriations. While conceding that a refund authorized by law must benefit the taxpayers whose taxes prompted the refund, the State asserts that the determination that a sufficient benefit exists is the legislature's alone. We therefore turn to the legislative determination concerning the benefits of the 2009 appropriation.

C. Taxpayer Benefit from 2009 Appropriation

¶ 33 The legislature directly addressed the issue of benefits when it amended former RCW 46.09.170(4) in 2010. It found that "the appropriation of funds from the NOVA account during the 2009-11 fiscal biennium for maintenance and operation of state parks . . . will benefit boaters and off-road vehicle users and others who use nonhighway and nonmotorized recreational facilities." Laws of 2010, 1st Sp. Sess., ch. 37, § 936 (emphasis omitted). Subsequent enactments that clarify an earlier statute may apply retrospectively. Matteson, 142 Wash.2d at 307, 12 P.3d 585. WOHVA insists, however, that the benefits that ORV users will receive from the 2009 appropriation are insufficient for the appropriation to qualify as a lawfully authorized refund.
¶ 34 As an example of the deficiency of the 2009 appropriation, WOHVA complains about the possible expenditure of funds "to improve accessibility for boaters." Former RCW 46.09.170(4) (2009). Boaters are excluded from the statutory definition of "nonhighway vehicles" and are entitled to individual tax refunds. Former RCW 46.09.020(10)(a), recodified as RCW 46.09.310(8)(a) (eff. July 1, 2011); RCW 79A.25.050. Because boaters may receive refund benefits under the 2009 appropriation, WOHVA argues that the legislature was not attempting to target the refund to taxpayers who fund the NOVA account. The 2009 appropriation refers to the possibility of spending the refund to improve "accessibility for boaters and [ORV] users," however, and does not provide a separate appropriation for boaters. Former RCW 46.09.170(4). That boaters may benefit from the continued operation of state parks that the 2009 appropriation allows does not undermine the determination that those who fund the underlying refund will benefit as well.
¶ 35 WOHVA rejects the State's claim that paying part of the salaries and benefits to the employees at Riverside Park, the only state park with ORV trails, will provide some benefit to ORV users, and it contends that any benefits to park users generally will be more than offset by losses in funding targeted to the ORV taxpayer groups.[3] As support for this contention, WOHVA cites statements from state and national park representatives documenting the impact of lost NOVA grants on ORV users. One statement refers to alternative funding, however, and others do not delineate cuts to ORV facilities specifically. We agree with the State that in a time of reduced revenue, it is not arbitrary or irrational for legislators to give priority to state facilities over federal facilities. Furthermore, the notion that former funds were targeted to ORV users contradicts the premise that NOVA grants are awarded on a competitive basis. As the State asserts, there is no certainty that ORV users would have received the 2009 appropriation if Parks had not. Still, WOHVA claims that because of the 2009 appropriation, it is "undisputed" that the appellants "are receiving nothing at all from the NOVA program." Reply Br. of Appellant at 21.
*966 ¶ 36 The State maintains that funding a state park system that provides some of the outdoor recreational activities the NOVA program supports will benefit at least some of the taxpayers who fund the NOVA account. See NMA, 127 Wash.App. at 416, 110 P.3d 1196 (benefit under former RCW 46.09.170 comes in the form of ORV, nonmotorized, and nonhighway recreational uses). As stated, ORV users are not the only taxpayers who fund and benefit from that account. In addition to supporting the nonmotorized recreational activities described earlier, NOVA funding now benefits recreationists who do not use trails and stay close to nonhighway roads, such as anglers, gatherers, and sightseers. Furthermore, ORV users will receive funding through the ORV account provisions in former RCW 46.09.170(2), and the record shows that expenses for the ORV facilities at Riverside Park will be paid by the refund allowed under former RCW 46.09.170(2)(c). As the State points out, some of that funding may go to employee salaries and benefits as well. In addition, the Board received a $1,062,000 appropriation from the NOVA account for its grant program for this biennium. Laws of 2009, ch. 564, § 304. Although WOHVA correctly argues that such funding does not validate the 2009 appropriation, it does show that ORV users are receiving a considerable percentage of the one percent refund.
¶ 37 As the State asserts, WOHVA seems to seek a return to the statutory framework in which only ORV users benefited from the motor vehicle fuel excise tax refund. WOHVA's complaint sought, in addition to injunctive relief, a judgment declaring that the legislature may not appropriate NOVA program funds for purposes other than benefitting ORV users. The NOVA fund now accommodates several other types of nonhighway recreation, and it would be unconstitutional to exclude the taxpayers who engage in those types of recreation from the refund program in favor of ORV users exclusively. As the State argued below,
Nearly forty years of legislative history has produced a program that is much broader and more inclusive than the original ATV program. Today, 80% of the recreational nonhighway fuel tax refund is comprised of taxes paid by people using fuel to power passenger vehicles to reach non-motorized recreational activities or facilities. Thus, Petitioners' underlying premisethat the refund "belongs" exclusively to ORV usersis false as a factual matter.
Clerk's Papers at 627-28.
¶ 38 We conclude that a refund authorized by law under article II, section 40 must benefit nonhighway users who paid motor vehicle fuel excise taxes and that the 2009 appropriation satisfies that requirement. WOHVA does not establish the unconstitutionality of the 2009 appropriation beyond a reasonable doubt, and we affirm the trial court's order granting the State's motion for summary judgment and dismissing WOHVA's complaint.
I concur: HUNT, J.
WORSWICK, A.C.J. (dissenting).
¶ 39 While I recognize the unprecedented fiscal challenge that the recent recession has posed for our legislature, I respectfully dissent from the majority's holding that the legislature's 2009-2011 biennial appropriation of the NOVA[4] account's excess fund balance to the state parks budget was constitutional. While nonhighway and nonmotorized recreational facilities may benefit from a well-funded parks maintenance and operation budget, the legislature's finding that "the appropriation of funds from the NOVA account during the 2009-2011 fiscal biennium for maintenance and operation of state parks or to improve accessibility for boaters and off-road vehicle users at state parks will benefit boaters and off-road vehicle users and others who use nonhighway and nonmotorized recreational facilities" in and of itself is insufficient to overcome the constitutional prohibition on motor vehicle gas tax funds being used for nonhighway purposes. Former *967 RCW 46.09.170 (2009), recodified as RCW 46.09.520.
¶ 40 I hold a differing view of the scope of the article II, section 40 refund provision in the Washington Constitution. This provision, which defines "[r]efunds authorized by law for taxes paid on motor vehicle fuels" as a "highway purpose" cannot reasonably be interpreted to provide unfettered discretion to the legislature to appropriate these refunds without limitation. Wash. Const. art. II, § 40.
¶ 41 The State and the majority both cite Nw. Motorcycle Ass'n v. State Interagency Comm. for Outdoor Recreation (NMA), 127 Wash.App. 408, 110 P.3d 1196 (2005) to support this appropriation. NMA dealt with the broader question of whether a one percent withdrawal from the motor vehicle fund fell within the refund provision of article II, section 40. I do not read NMA to stand for the proposition that the legislature, under its plenary powers of taxation, may do whatever it wants with this "refund." And as the NMA court recognized, a refund is generally "a sum that is paid back." 127 Wash.App. at 415, 110 P.3d 1196 (quoting Webster's Third New Int'l Dictionary 1910 (1993)). This is particularly relevant here because our constitutional analysis requires us to look to the plain language of the text and afford such its reasonable interpretation. Wash. Water Jet Workers Ass'n v. Yarbrough, 151 Wash.2d 470, 477, 90 P.3d 42 (2004). I find no plausible argument that the transfer of the NOVA excess fund balance to cover a shortfall in the budget for state parks comports with the plain meaning and a reasonable interpretation of the refund provision.
¶ 42 The State's position, that the refund mechanism under article II, section 40 authorizes the appropriation in this instance, is an end run around the constitution's explicit prohibition on the use of highway funds for nonhighway purposes. And despite the fact that we presume statutes to be constitutional and we are generally deferential to the legislature in light of its plenary taxing and spending powers, I still find the appropriation here to be improper. By endorsing the State's expansive interpretation of article II, section 40, the majority has essentially authorized the legislature to enact a NOVA excess fund balance transfer for nearly any purpose, so long as the legislature makes a finding that nonhighway users will benefit, regardless of how weak the link is. Based on this, I dissent.
NOTES
[1] The term "nonhighway and off-road vehicle activities program account" was not substituted for "outdoor recreation [account]" until 1995. Laws of 1995, ch. 166, § 9.
[2] The appropriations in chapter 26, sections 365 and 366, were intended to implement section 920 and not the separately enacted ORV excess fund balance provision. See Laws of 2003, 1st Sp. Sess., ch. 25, § 922.
[3] Although the parties stipulated that only one state park, Riverside, has ORV recreational facilities, the record shows that Steamboat Rock Park devotes 130 acres to ATV use. Furthermore, while WOHVA claims that ORV users can access but a single facility in the entire state providing benefits to them, the record shows that ORV users ride on roads, trails, private forest land, designated open riding areas (e.g., sand dunes), urban/suburban lots, and ORV sports parks.
[4] Nonhighway and off-road vehicle activities funding under RCW 46.09.520 is generally referred to as the NOVA program.