[No. 86602-3.   En Banc.]
Argued May 22, 2012.     Decided December 13, 2012.

WASHINGTON OFF HIGHWAY VEHICLE ALLIANCE ET AL.,
*Petitioners*, v. THE STATE OF WASHINGTON
ET AL., *Respondents*.

*James L. Buchal* (of *Murphy & Buchal LLP*), for petitioners.

*Robert M. McKenna, Attorney General, Steve E. Dietrich, Senior Counsel*, and *Joseph V. Panesko, Assistant*, for respondents.

*Philip A. Talmadge* and *Sidney C. Tribe* on behalf of Automotive United Trades Organization, amicus curiae.

¶1 OWENS, J. — This case concerns Washington Constitution article II, section 40's refund provision, which states that a refund of motor vehicle fuel tax revenues is a "highway purpose[ ]." WASH. CONST. art. II, § 40(d). Specifically at issue is the legislature's statutory refund program, which places one percent of fuel tax revenues into a special fund to benefit

off-road vehicle (ORV), nonmotorized, and nonhighway road recreational users for fuel consumed on nonhighway roads. In 2009, the legislature appropriated a portion of this special fund for the Parks and Recreation Commission's (Parks) general budget. The Washington Off Highway Vehicle Alliance (WOHVA), Northwest Motorcycle Association (NMA), and four individuals[1] representing ORV users contend that the Court of Appeals erred in holding that the appropriation was a refund within the meaning of article II, section 40. WOHVA argues that the appropriation was not sufficiently targeted to affected taxpayers to constitute a refund despite legislative findings to the contrary. Given the presumption of constitutionality and the evidence before us, we affirm the Court of Appeals.

## FACTS

A. Nonhighway Fuel Tax Refund History

¶2 The Washington Constitution requires that all motor vehicle fuel tax revenues and licensing fees be spent on "highway purposes." WASH. CONST. art. II, § 40. Article II, section 40(d) specifically includes, as a highway purpose, "[r]efunds authorized by law for taxes paid on motor vehicle fuels."

¶3 For many years, the legislature has refunded one percent of the motor vehicle fuel tax revenues to nonhighway recreational users, such as ORV users, hikers, campers, and hunters. *See, e.g.,* LAWS OF 1986, ch. 206, § 8; former RCW 46.09.170 (2010), *recodified as* RCW 46.09-.520.[2] Unlike a direct refund, this refund is spent for the benefit of the affected taxpayers, not directly returned to them. *See* former RCW 46.09.170. The treasurer divides the money between two accounts: (1) 41.5 percent in the ORV and nonhighway vehicle account (ORV account) and (2) 58.5 percent in the nonhighway and off-road vehicle activities

---

[1] For simplicity, we refer to petitioners simply as WOHVA.

[2] We use former RCW 46.09.170 as it was in effect at the time this action arose.

program (NOVA) account. Former RCW 46.09.170(2)(a)-(d). The majority of the funds in the ORV account are administered by the Department of Natural Resources (DNR) to build and maintain "ORV, nonmotorized, and nonhighway road recreation facilities." Former RCW 46.09.170(2)(a). The remaining portion of funds is shared by the Department of Fish and Wildlife (DFW) and Parks for identical purposes. Former RCW 46.09.170(2)(b), (c).

¶4 The NOVA account funds are administered by the Recreation and Conservation Funding Board (Board) and subject to specific distributive restrictions. The distributive restrictions include that "[n]ot less than seventy percent may be expended for ORV, nonmotorized, and nonhighway road recreation facilities"; and not less than 30 percent of this 70 percent must be spent on each group respectively. Former RCW 46.09.170(2)(d)(ii). The Board may use up to 30 percent of the NOVA account to fund education, information, and law enforcement programs. Former RCW 46.09-.170(2)(d)(i). Since 2003, the NOVA account funds have typically been awarded as grants to organizations, such as Parks, DNR, and even the federal government, for projects related to ORV, nonmotorized, and nonhighway recreational uses. *See* Clerk's Papers (CP) at 470; Laws of 2003, 1st Spec. Sess., ch. 26, § 920.

¶5 By way of background, the refund did not begin benefiting non-ORV users until a 2003 study, funded by the legislature, showed that non-ORV users contributed 80 percent of the 1 percent of refund revenues. The non-ORV users consist of two separate groups—nonmotorized recreational users and nonhighway road recreational users who use fuel to access their activities. *See* RCW 46.09.310(7), (10). Nonmotorized users include hikers, mountain bikers, and horseback riders, RCW 46.09.310(10); and nonhighway road recreational users include campers, fishers, kayakers, and firewood gatherers. RCW 46.09.310(7).

¶6 When the refund was first used "to construct and maintain nonmotorized recreation trails and facilities," the

NMA challenged its constitutionality. *Nw. Motorcycle Ass'n v. Interagency Comm. for Outdoor Recreation*, 127 Wn. App. 408, 412, 110 P.3d 1196 (2005) (*NMA*). The NMA challenged the constitutionality of using funds for non-ORV users, claiming such use was not a refund under article II, section 40. *Id.* at 412-14. Ultimately, the Court of Appeals upheld the legislature's decision, reasoning that disbursing the "refund through NOVA for the benefit of the affected taxpayers [came] within [the legislature's] plenary powers of taxation." *Id.* at 416.

B. The 2009 Appropriation

¶7 In the years between *NMA* and this lawsuit, the refund continued to benefit all affected taxpayers: ORV, nonmotorized, and nonhighway road recreational users. The challenged action in this case arose in 2009 when, in response to budgetary shortfalls, the legislature appropriated the excess fund balance from the NOVA account for the benefit of Parks. The legislature appropriated

> *such amounts as reflect the excess fund balance in the NOVA account to* the department of natural resources to install consistent off-road vehicle signage at department-managed recreation sites, and to implement the recreation opportunities on department-managed lands . . . , and *to the state parks and recreation commission for maintenance and operation of parks and to improve accessibility for boaters and off-road vehicle users.*

Former RCW 46.09.170(4) (2009) (emphasis added). The 2009 appropriation to Parks amounted to $9.56 million (2009 appropriation) and was not subject to the distributive restrictions of former RCW 46.09.170.

¶8 Parks used the 2009 appropriation "to pay a portion of the salaries and benefits of employees directly engaged in the maintenance and operation of state parks." CP at 98. "Virtually all of the state parks feature 'nonmotorized recreational facilities' within the meaning of [former] RCW 46.09.020 [(2007)]." *Id.* at 99. This means the parks featured trails and facilities that were accessed by, or adjacent to, a nonhighway road. *See* former RCW 46.09.020(11) (2007),

*recodified as* RCW 46.09.310(9). But only one park, Riverside State Park, features ORV recreational facilities. As a frame of reference, salaries and benefits represent 70 percent of the Parks operations budget and the 2009 appropriation accounted for 13 percent of that amount. As a direct consequence of the 2009 appropriation, Parks avoided several state park facility closures. The 2009 appropriation also ostensibly caused the Board to cease all grants during the 2009-2011 fiscal biennium.

C. Procedural History

¶9 Upset over the 2009 appropriation, WOHVA filed suit, alleging the appropriation was not a refund within the meaning of article II, section 40(d). WOHVA challenged the appropriation under the Administrative Procedure Act, chapter 34.05 RCW, and sought two separate forms of relief: (1) a declaratory judgment that "the Legislature may not lawfully appropriate NOVA program funds for purposes other than providing benefits to [ORV] users" and (2) an injunction to prevent the expenditures. CP at 11.

¶10 The State and WOHVA filed cross motions for summary judgment, and the trial court granted the State's motion and denied WOHVA's. WOHVA then appealed and, while the appeal was pending, the legislature amended the statute, adding, "The legislature finds that the appropriation of funds from the NOVA account during the 2009-2011 fiscal biennium . . . *will benefit* boaters and *off-road vehicle users and others who use nonhighway and nonmotorized recreational facilities.*" Laws of 2010, 1st Spec. Sess., ch. 37, § 936(4) (emphasis added). The Court of Appeals ultimately affirmed in a split decision. *Wash. Off Highway Vehicle Alliance v. State*, 163 Wn. App. 722, 741, 260 P.3d 956 (2011). In doing so, the majority determined WOHVA had failed to prove that the 2009 appropriation did not sufficiently benefit affected taxpayers so as to violate article II, section 40. *Id.* The dissent reasoned the legislature had overstepped its authority and that the benefit to affected

taxpayers was too weak to constitute a refund. *Id.* at 742-43 (Worswick, A.C.J., dissenting).

¶11 WOHVA filed a petition for discretionary review with this court, challenging only whether the 2009 appropriation was constitutional. The State, in its response, raised a preliminary issue of whether the 2009 appropriation's expiration on June 30, 2011, rendered the constitutional issue moot. We granted review. *Wash. Off Highway Vehicle Alliance v. State*, 173 Wn.2d 1013, 272 P.3d 247 (2012).

## ISSUE PRESENTED[3]

¶12 Is the 2009 appropriation a refund under article II, section 40?

## ANALYSIS

### A. Is WOHVA's Case Moot?

¶13 Before we can address the constitutionality of the refund, we must first decide whether this case is rendered moot by the 2009 appropriation's lapse in 2011. Generally, we will dismiss a case as moot if we " 'can no longer provide effective relief.' " *In re Marriage of Horner*, 151 Wn.2d 884, 891, 93 P.3d 124 (2004) (quoting *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984)). "However, this court may review a moot case if it presents issues of continuing and substantial public interest." *Id.*

¶14 The State is correct that this case is technically moot. Because the 2009 appropriation expired over a year ago, WOHVA cannot receive the injunctive relief it requested. *See Cooper v. Dep't of Insts.*, 63 Wn.2d 722, 723-24, 388 P.2d 925 (1964) (per curiam) (dismissing as moot a challenge to issues related to an expired appropriation act). Additionally, WOHVA most likely cannot receive its re-

---

[3] We do not consider the State's collateral estoppel argument, which it made at the Court of Appeals, as the State has apparently abandoned it. *See* RAP 13.7(b).

quested declaratory relief that the legislature may use NOVA funds to benefit only ORV users. *See NMA*, 127 Wn. App. at 416 (upholding use of NOVA funds for benefit of nonmotorized recreational users (i.e., non-ORV users)).

¶15 Nevertheless, WOHVA presents an issue of continuing and substantial public interest, an exception to the mootness doctrine. Whether the case presents such an issue depends on " '(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur.' " *Horner*, 151 Wn.2d at 892 (internal quotation marks omitted) (quoting *Westerman v. Cary*, 125 Wn.2d 277, 286, 892 P.2d 1067 (1994)). Another possible factor is the " 'level of genuine adverseness and the quality of advocacy of the issues.' " *Id.* (internal quotation marks omitted) (quoting *Westerman*, 125 Wn.2d at 286).

¶16 Applying those factors here, we conclude review is appropriate. First, the legislature's decision on how to spend NOVA funds is certainly a public issue as it involves public funds. Second, an authoritative determination will guide future legislatures in the appropriate use of NOVA funds by solidifying the constitutional limits of article II, section 40(d). Third, the issue is likely to recur as the legislature could still use NOVA funds to cover other budgetary shortfalls in the future. The mere fact that sales of discover passes and day-use permits now supplement the Parks budget, Laws of 2011, ch. 320, § 22, does not foreclose the possibility of future budgetary shortfalls. And fourth, the issue is properly briefed by the parties. One final consideration that favors review is that such appropriations last only two years, which may not be sufficient time for an appeal, thus evading review. As a result, WOHVA presents an issue of continuing and substantial public interest.

B. Is the 2009 Appropriation a Refund under Article II, Section 40?

### 1. *Standard of Review*

¶17 A party challenging a statute's constitutionality "must prove that the statute is unconstitutional beyond a reasonable doubt." *Sch. Dists.' Alliance for Adequate Funding of Special Educ. v. State*, 170 Wn.2d 599, 605, 244 P.3d 1 (2010). While not an evidentiary standard, "we will not strike a duly enacted statute unless we are 'fully convinced, after a searching legal analysis, that the statute violates the constitution.' " *Id.* at 606 (quoting *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998)). The challenger must prove "by argument and research" that the statute does in fact violate the constitution. *Island County*, 135 Wn.2d at 147. "This burden of proof is in keeping with the fact that '[t]he Legislature possesses a plenary power in matters of taxation except as limited by the Constitution.' " *State ex rel. Heavey v. Murphy*, 138 Wn.2d 800, 808-09, 982 P.2d 611 (1999) (alteration in original) (quoting *Belas v. Kiga*, 135 Wn.2d 913, 919, 959 P.2d 1037 (1998)). " 'The construction of the meaning and scope of a constitutional provision is exclusively a judicial function.' " *City of Tacoma v. O'Brien*, 85 Wn.2d 266, 271, 534 P.2d 114 (1975) (quoting *State Highway Comm'n v. Pac. Nw. Bell Tel. Co.*, 59 Wn.2d 216, 222, 367 P.2d 605 (1961)).

### 2. *Constitutionality*

¶18 We are determining only whether the 2009 appropriation is a "[r]efund[ ] authorized by law," WASH. CONST. art. II, § 40(d). "When interpreting constitutional provisions, we look first to the plain language of the text and will accord it its reasonable interpretation. . . . The words of the text will be given their common and ordinary meaning, as determined at the time they were drafted." *Wash. Water Jet Workers Ass'n v. Yarbrough*, 151 Wn.2d

470, 477, 90 P.3d 42 (2004) (citations omitted). We need not look to legislative history if the provision is unambiguous. *Heavey*, 138 Wn.2d at 811.

¶19 Subsection (d), at issue here, states that "[r]efunds authorized by law for taxes paid on motor vehicle fuels" are "highway purposes." WASH. CONST. art. II, § 40(d). The plain meaning of "refund" is "'a sum that is paid back.'" *NMA*, 127 Wn. App. at 415 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1910 (2002) (incorrectly cited as 1993 edition)). This definition is not in dispute.[4] Therefore, the plain meaning of the term is unambiguous. Applying this definition, the *NMA* court upheld using the one percent fuel tax refund to benefit affected taxpayers—ORV recreational users, nonmotorized recreational users, and nonhighway road recreational users. *Id.* at 416. An underlying principle that supported the *NMA* court's reasoning was that the contested expenditure constituted a refund because it benefited the affected taxpayers. *See id.* We now adopt the *NMA* court's reasoning for purposes of this case.

¶20 WOHVA contends *NMA* is inapplicable here because the funds in *NMA*, unlike the 2009 appropriation, were refunded to the Board, which used the funds according to the distributive restrictions of former RCW 46.09.170 (2003). *See id.*; former RCW 46.09.170(1)(iv) (2003). However, considering that the distributive restrictions are not constitutionally required, *see* WASH. CONST. art. II, § 40(d), the general principle that a refund will be upheld so long as it benefits affected taxpayers is still instructive. Consequently, we must decide whether the 2009 appropriation sufficiently benefits affected taxpayers so as to constitute a refund.

---

[4] To the extent WOHVA asks us to define "refund" as requiring a direct payment to taxpayers, we decline. WOHVA contends that while this definition would invalidate the 2009 appropriation, it would not apply to NOVA as a whole, as WOHVA was not seeking to strike down NOVA. We reject this incongruous position, however, as it would effectively create a poison pill allowing WOHVA to scuttle any refund expenditures it disagreed with. We also decline to strike down NOVA as a whole as this issue was neither raised in the petition for discretionary review nor properly briefed. *See* RAP 13.7(b).

¶21 As a preliminary point, prior case law involving article II, section 40 is relatively unhelpful in resolving this issue. WOHVA, arguing to the contrary, believes these cases illustrate a history of this court striking down overreaching legislatures. While true, not one of these cases involved subsection (d) and what properly constitutes a "[r]efund[ ] authorized by law," WASH. CONST. art. II, § 40(d). *See State ex rel. O'Connell v. Slavin*, 75 Wn.2d 554, 452 P.2d 943 (1969); *Pac. Nw. Bell*, 59 Wn.2d 216; *Auto. Club of Wash. v. City of Seattle*, 55 Wn.2d 161, 346 P.2d 695 (1959). Accordingly, these cases shed no light on interpreting the 2009 appropriation at issue.

¶22 Turning to the 2009 appropriation, we are presented with a legislative finding of fact that the 2009 appropriation "will benefit boaters and off-road vehicle users and others who use nonhighway and nonmotorized recreational facilities." Former RCW 46.09.170(4) (2010).[5] Traditionally, we give great deference to the legislature's factual findings. "Legislatures must necessarily make inquiries and factual determinations as an incident to the process of making law, and courts ordinarily will not controvert or even question legislative findings of facts." *O'Brien*, 85 Wn.2d at 270, *quoted in State v. McCuistion*, 174 Wn.2d 369, 391, 275 P.3d 1092 (2012).

¶23 WOHVA argues that we owe no deference to the legislature in this case because it does not involve any findings of fact, only a constitutional interpretation, which is strictly a judicial determination. WOHVA, however, applies too broad a brush in painting the picture of its argument. This case certainly involves interpreting what constitutes a refund under article II, section 40. But the legislative finding that the appropriation will benefit affected taxpayers is not a legislative finding that the appro-

---

[5] We give retroactive effect to the legislature's clarifying amendment that those who use nonhighway and nonmotorized recreational facilities will benefit from the appropriation. *See In re Pers. Restraint of Matteson*, 142 Wn.2d 298, 307, 12 P.3d 585 (2000).

priation is a refund. Instead, the finding is simply a statement about how the appropriation will impact certain groups, not a constitutional interpretation. We therefore defer to the legislature on this finding.

¶24 Regardless, even assuming arguendo that such deference is misplaced, there is ample evidence in the record to conclude that the 2009 appropriation sufficiently benefited nonmotorized and nonhighway road recreational taxpayers—80 percent of affected taxpayers—to constitute a refund. "Virtually all of the state parks feature 'nonmotorized recreational facilities,'" CP at 99, and many state parks feature nonhighway road recreational facilities. Moreover, Parks land receives some of the most concentrated use of any "natural resource agenc[y]." *Id.* at 190. The employees paid by the 2009 appropriation operate and maintain these facilities. Because nonhighway and nonmotorized road recreational taxpayers can utilize these facilities, they benefit from the 2009 appropriation. Consequently, the 2009 appropriation is a refund.

¶25 WOHVA disagrees for four main reasons. The first two reasons are similar to WOHVA's argument that the 2009 appropriation is too untargeted and too uncertain. Third, WOHVA appears to argue that ORV users did not receive their fair share of the appropriation. And fourth, WOHVA argues that the appropriation cannot be a refund because the appropriation benefited boaters and, more generally, all Washingtonians. We address each argument in turn.

¶26 First, WOHVA contends that this alleged benefit is too untargeted to be considered a refund. Granted, paying salaries is certainly an attenuated benefit that is at the limit of what may be considered a refund. However, paying salaries and benefits is a necessary step in maintaining the nonmotorized recreational facilities in state parks. *Cf. Freeman v. Gregoire*, 171 Wn.2d 316, 330, 256 P.3d 264 (2011) (upholding appropriation of motor vehicle funds for a valuation of highway lanes because it "was a necessary prelimi-

nary step in managing the use of highway lands"). Without the 2009 appropriation, Parks would have been forced to close numerous facilities, which would have deprived affected taxpayers of access to many nonmotorized recreational facilities. WOHVA even seems to acknowledge that funding positions is necessary to benefit affected taxpayers. Suppl. Br. of Pet'rs at 5 (stating that the lack of funding harmed ORV users by causing "substantial public employment losses and operational curtailments in . . . public programs providing ORV benefits"). Ultimately, if salaries are unpaid, then some facilities will close and affected taxpayers who contributed 80 percent of the refund revenues are deprived of numerous recreational facilities.

¶27 Second, WOHVA claims the benefit from the 2009 appropriation is too uncertain to constitute a refund. Contrary to WOHVA's claims that the benefit is too uncertain, affected taxpayers are highly likely to visit state parks. As mentioned above, these state parks receive concentrated use and almost all feature nonmotorized recreational facilities. Under these circumstances, the legislature reasonably concluded that a nonmotorized or nonhighway road recreational user will utilize Parks facilities. Moreover, WOHVA's critique can be leveled against any indirect refund, even those that benefit ORV users. No matter how the one percent refund of fuel tax revenue is spent, the benefit to the recreationalist taxpayer is not guaranteed. Even when funds are used to construct an ORV trail, there is no guarantee that ORV users will utilize the new trail. Accordingly, this challenge to the 2009 appropriation fails.

¶28 Third, to the extent WOHVA is arguing that the 2009 appropriation is unconstitutional simply because ORV users did not receive their fair share of the refund, WOHVA's argument fails. While ORV users did not benefit from the 2009 appropriation, ORV users ostensibly benefited from the ORV account that received almost $5 million from fuel tax revenues. LAWS OF 2009, ch. 564, §§ 303, 307, 308 (Parks received $239,000; DFW received $415,000; DNR received

$4,236,000). Moreover, WOHVA bears the burden of proving they received an insufficient amount of these funds, a burden WOHVA does not even attempt to meet.

¶29 Fourth, WOHVA's remaining argument fails as well. WOHVA complains because the legislature intended to benefit boaters, who WOHVA argues are unaffected taxpayers. However, the plain meaning of the term "boater" likely includes at least one group of nonhighway road recreational users—kayakers and canoe users, former RCW 46.09.020(9).

¶30 Even assuming boaters are unaffected taxpayers, the 2009 appropriation remains constitutional because paying salaries and benefits of employees is a necessary prerequisite to Parks maintaining its facilities. These employees will necessarily work to maintain and improve the state parks they work in. Because many state parks contain boating facilities, the Parks employees will likely improve the boating facilities while improving the state parks generally. In other words, the benefit to boaters is a consequence of paying employees' salaries and benefits. Because paying salaries and benefits is a necessary expense to providing any Parks facilities, the incidental benefit to boaters is of little analytical consequence. Moreover, despite the incidental benefit to boaters, affected taxpayers still benefit from the appropriation.

¶31 Similarly, while the 2009 appropriation generally benefited all Washingtonians who accessed state parks, affected taxpayers were still the directed recipients of the appropriation. And, as mentioned before, paying these salaries and benefits is a foundational prerequisite for affected taxpayers to utilize the facilities at state parks. Thus, while the legislature acted at the edge of its constitutional authority in granting a refund, the appropriation stands because it sufficiently targets and benefits affected taxpayers.

¶32 Ultimately, there is ample evidence to conclude that the majority of affected taxpayers benefit from the 2009 appropriation. WOHVA fails to present evidence proving otherwise. Paying the salaries and benefits of Parks employees ensures that the nonmotorized recreational opportunities that "[v]irtually all of the state parks feature," CP at 99, continue to remain available. Given the presumption of constitutionality, the 2009 appropriation is a refund.

## CONCLUSION

¶33 We hold that WOHVA presents an issue of substantial public interest that warrants review even though the issue is technically moot. In turning to the merits, we hold that WOHVA fails to meet its burden of proving the 2009 appropriation is unconstitutional. While the 2009 appropriation stretches the statutory refund to its constitutional limits, the legislative finding of a benefit to affected taxpayers, in addition to the ample evidence in the record, supports upholding the appropriation. Consequently, we affirm the Court of Appeals.

MADSEN, C.J., and WIGGINS, J., concur.

¶34 GONZÁLEZ, J. (concurring in result) — I concur with the lead opinion's decision to affirm the Court of Appeals, but this case is moot and should be dismissed on that basis. As the disputed appropriation expired more than a year ago, we cannot provide Washington Off Highway Vehicle Alliance its requested relief. Although we may review moot cases that present issues of continuing and substantial public interest, this case concerns an isolated fact pattern that is unlikely to reoccur.

FAIRHURST, J., concurs with GONZÁLEZ, J.

¶35 J.M. JOHNSON, J. (dissenting) — I disagree with the lead opinion's holding in this case because the purported benefit of paying park employees from funds dedicated to auto gas taxes has no connection to the constitutional limit on use of such a gas tax for public roads. Thus, the legislature's 2009 appropriation, while laudably saving the park employees' jobs, constitutes an obvious end run around the explicit prohibitions found in article II, section 40 of the Washington Constitution. The historic distribution of nonhighway use gas tax was through grants by the Recreation and Conservation Funding Board (RCFB). Here, the legislature appropriated gas taxes from nonhighway and off-road vehicle activities (NOVA) funds directly to the Parks and Recreation Commission (Parks). The money was then used by Parks to pay a portion of the salaries and benefits of its park employees. Taxes paid on gas but not used for road vehicles under article II, section 40 of the Washington Constitution must have a specifically targeted benefit to identifiable taxpayers in order to comply with constitutional restrictions on the nonhighway expenditure of motor vehicle fuel tax revenue. In my view, payment of salaries and benefits for general park personnel does not provide such a targeted benefit. It is hard not to conclude this was a sham to fill budget problems of Parks (made in the same budget). Thus, I respectfully dissent.

## ANALYSIS

¶36 The unambiguous language of article II, section 40 is inconsistent with the 2009 Parks appropriation. Article II, section 40 provides:

> All fees collected by the State of Washington as license fees for motor vehicles and all excise taxes collected by the State of Washington on the sale, distribution or use of motor vehicle fuel and all other state revenue intended to be used for highway purposes, shall be paid into the state treasury and placed in a special fund to be used exclusively for highway purposes.

Additionally, one valid highway fund purpose is the provision of "[r]efunds authorized by law for taxes paid on motor vehicle fuels . . . ." WASH. CONST. art. II, § 40(d). There is an inherent tension between article II, section 40's limit on expenditures and its allowance of refunds because of the possibility that the former could be used to circumvent the latter. In *Northwest Motorcycle Ass'n v. Interagency Committee for Outdoor Recreation*, 127 Wn. App. 408, 415-16, 110 P.3d 1196 (2005) (*NMA*), the Court of Appeals upheld the legislature's practice of refunding motor vehicle fuel tax revenue through NOVA for off-road areas, i.e., to those people who use gasoline for nonhighway purposes. The legislature may have the power to enact such refunds under article II, section 40, but the current case is distinct from *NMA*.

¶37 Here, the legislature decided to appropriate NOVA funds directly " 'to the state parks and recreation commission for maintenance and operation of parks and to improve accessibility for boaters and off-road vehicle users.' " Clerk's Papers (CP) at 63 (quoting ENGROSSED SUBSTITUTE H.B. 1244, § 944(4), at 241, 61st Leg., Reg. Sess. (Wash. 2009)). Parks then used the funds "to pay salaries and benefits for employees who operate and maintain the state parks . . . ." CP at 98. Even if every state park featured a nonmotorized recreational facility (and they do not), this scenario is distinct from the specific distributive restrictions in place through NOVA where "[n]ot less than seventy percent may be expended for ORV [off-road recreational vehicle], nonmotorized, and nonhighway road recreation facilities." Former RCW 46.09-.170(2)(d)(ii) (2009) (recodified as RCW 46.09.520(2)(d)(ii)).

¶38 Unlike the challenged 2009 appropriation, NOVA historically provided a refund to the public with a specifically targeted benefit to affected taxpayers. Additionally, the RCFB acts as an oversight board to ensure that funds are spent as designated by the legislature. The 2009 appropriation, however, provided no documented benefit to those

people who use gasoline for nonhighway purposes. Funding for the salaries and benefits of general park personnel is not targeted to the operation and maintenance of non-motorized and nonhighway road recreation facilities. Parks employees perform a number of different functions, and the actual benefit to affected taxpayers is difficult to quantify for constitutional purposes. Still, the law requires a refund under article II, section 40 to have a specifically targeted benefit to affected taxpayers in order to comply with constitutional restrictions.

¶39 The lead opinion overstates the required showing on the part of petitioners in order to prove that the statute violates the constitution. The legislature cannot override the restrictions of the constitution by simply arguing a challenger has not proved its complaint " 'by argument and research.' " Lead opinion at 234 (quoting *Island County v. State*, 135 Wn.2d 141, 147, 955 P.2d 377 (1998)); *cf. Pierce v. King County*, 62 Wn.2d 324, 332, 382 P.2d 628 (1963) (explaining that " 'mere acquiescence, regardless of the period thereof, cannot legalize a clear usurpation of power which offends against the constitution adopted by the people' " (quoting *Forbes v. Hubbard*, 348 Ill. 166, 180 N.E. 767, 771 (1932), *overruled on other grounds by La Salle Nat'l Bank v. City of Evanston*, 57 Ill. 2d 415, 312 N.E.2d 625 (1974))). Accordingly, the legislature's declaration that the 2009 appropriation " 'will benefit boaters and off-road vehicle users and others who use nonhighway and non-motorized recreational facilities' " may not be controlling— surely not on this court. Lead opinion at 231 (emphasis omitted) (quoting LAWS OF 2010, 1st Spec. Sess., ch. 37, § 936(4)).

¶40 The people of the state of Washington passed article II, section 40 because they wanted " 'to limit definitely the use of gasoline taxes and automobile registration fees to street and highway construction, maintenance and safety.' " Clerk's Papers at 604 (quoting *State of Washington Voters' Pamphlet, General Election* 47 (Nov. 7, 1944)). An expansive

definition of "refund" under article II, section 40 may be appropriate because of the administrative burden presented in refunding tax dollars to those people who use gasoline for nonhighway purposes, but the lead opinion goes too far in this case. We must preserve the constitutional limits on legislative expenditures found in article II, section 40 as adopted by the people. The people wanted to prevent the diversion of motor vehicle fuel tax revenue for nonhighway purposes. As with other constitutional provisions, our decisions must enforce this constitutional limit. Thus, I would find any future appropriations that are similar to the 2009 appropriation at issue in this case constitutionally invalid.

## CONCLUSION

¶41 I would require any expenditure of gas tax purportedly not used on highway roads under article II, section 40 to have a specifically targeted benefit to the affected nonhighway taxpayers in order to comply with the constitutional restrictions on the expenditure of motor vehicle fuel tax revenue. In my view, the proposed benefit to nonhighway taxpayers in the 2009 appropriation for Parks employees' salaries is so beyond attenuation as to be fiction. Thus, I would find any future appropriations that are similar to the 2009 appropriation at issue in this case constitutionally invalid.

C. JOHNSON, CHAMBERS, and STEPHENS, JJ., concur with J.M. JOHNSON, J.